66   127
108   658

WILLIAM L. WEBBER, TRUSTEE, v. THOMAS B.
BARRY ET AL.

*Trespass—Counsel participating in criminal case based on same facts—Waiver of objections—Evidence—Cross-examination.*

1. Where after the selection of a jury in a civil suit an objection was made to any further proceedings in the case for the reason that the attorney for the plaintiff had been engaged as assistant prosecutor in a criminal prosecution against the same defendants growing out of the same state of facts as those relied on for a recovery in the civil suit, no objection having been made to said attorney's appearing up to that time,—

   *Held*, that if, when the defendants pleaded to the declaration filed by said attorney, he had taken part in said criminal prosecution, such plea was a waiver of any objection to his commencing said civil suit; and, if they learned of his connection with the criminal prosecution *after* the civil suit was commenced, it was their duty to make their objection *at once*.

2. Defendant was sued in trespass for leading a party of "strikers" onto plaintiff's premises, and interfering with his business there carried on, and a witness was allowed to testify to what defendant said at a meeting of the "strikers" on the *evening* before the commission of the alleged trespass, and to be fully cross-examined by defendant's counsel, who sought to go *further*, and show on such cross-examination what defendant said to the men at a meeting held on the *forenoon* of the same day.

   *Held*, that an objection to the proposed cross-examination as calling for a statement of the defendant to be used as evidence in his own favor, and as being no part of the cross-examination, was well taken[1].

3 No man has a right to enter upon the premises of another for the purpose of inducing persons in his employ to leave their employment to the injury of the employer, for the purpose of securing higher wages, or working less hours for the same pay, or for any other reason, and by so doing he becomes a trespasser.

Error to Saginaw.   (Gage, J.)   Argued January 11, 1887.
Decided June 9, 1887.

[1] See *Weaver v. Bromley*, 65 Mich. 212 (head-note 2).

Trespass.    Defendants bring error.    Affirmed.    The facts
are stated in the opinions.

*Frank L. Dodge* and *Jerome W. Turner,* for appellants.

*Wisner & Draper,* for plaintiff.

MORSE, J.    Upon the argument of this case, I was inclined
to think that error had been committed in some of the pro-
ceedings upon the trial.    A subsequent careful examination
of the record leads me to the conclusion that the verdict
and the judgment of the court below should stand.

I shall only refer here to the points raised in the case that
seemed to me, on the argument, to have been erroneously
decided by the circuit judge.

It struck me quite forcibly, at first, that Davitt should not
have been allowed to act as an attorney in the case against
the defendants; and also that the witness James B. Walsh
should have been permitted, on cross-examination, to answer
the question:

"Do you remember what he [Barry] said to the men that
day about observing the law, if anything?"

' But on an examination of the record it does not appear
that Davitt acted in the case at all after the objection was
made, nor does it appear that when he commenced the suit
he had then been engaged in the criminal cases.    It would
have been the most proper course, it seems to me, for the
defense to have objected to Davitt's taking any part in the
trial at the beginning.    Instead of this, they sat by and
allowed him to participate in selecting the jury without any
demur or protest.    They knew then as well as afterwards the
part he had taken in the criminal prosecutions.    But they
wait until the panel is full and accepted by them, and then
raise an objection, not to Davitt's continuing to act further
in the case, or that the panel selected be discharged and a
new one obtained without his aid, but they object to the

swearing of the jury, or the giving of any testimony in the case. They seek to stop the proceeding, and to secure a discontinuance of the case, because of a participation therein by Davitt, to which they at the time made no objection. If, when they pleaded to Davitt's declaration, he had taken part in the criminal proceedings, their plea was a waiver of any objection they might have to his commencement of the suit; and, if they found it out later, it was their duty to move at once. In my opinion they waived by their acts all legal objection, if there·was any, to the commencement of suit by Davitt, or his participation in selecting the jury.

In any event, I am not prepared to say that my Brother SHERWOOD is not correct in his view of this matter; but I prefer to reserve my opinion upon the question of Davitt's legal right to participate in the trial of this cause, had such right been questioned at a seasonable time and in the proper manner.

In relation to the testimony of James B. Walsh, it appears that he was called by the plaintiff, and gave testimony upon his direct examination of what the defendant Barry said to a meeting of men on the evening of the tenth of July, the day before the occurrence at the mill of the plaintiff. The defendants' counsel, I find, were permitted to cross-examine the witness fully as to all that Barry said in his speech that night. But the counsel undertook to go further, and asked this question:

" Q. Did you hear the speech delivered by Barry on the forenoon of the tenth?

" A. Yes, sir."

Then the following question was propounded:

" Do you remember what he said to the men that day about observing the law, if anything ?"

This was objected to by plaintiff's counsel as calling for a statement of the defendant to be used as evidence in his own favor, and as being no part of the cross-examination, as

plaintiff had introduced no testimony of this forenoon meeting, or what was said or done there. This appears, from the record, to be a good objection, and the question was properly ruled out. The plaintiff had given no evidence in relation to this meeting, and therefore what Barry said there was not admissible, at least at that stage of the proceeding.

I am fully satisfied that the defendant Barry had no right to lead a gang or a mob of men upon the premises of plaintiff, to interfere in any manner or to consult with the men who were in the employ of plaintiff. If he did so, he must be held responsible for their acts of violence, notwithstanding that he halted them 200 feet from the mill, and told them to remain there until he came back. The trouble with Barry's case is that he had no business himself upon the premises of plaintiff for the purpose that he admits he was there. It was none of his business whether the men working for plaintiff were satisfied to work 11 or 11½ hours per day or not. The real *animus* of his visit was, as can plainly be seen, to induce the employes of plaintiff to join the men already gathered in a strike for 10 hours. Whatever right he may have had to influence these men to quit work, unless the 10-hour demand was acceded to by their employer, while they were not at work, he certainly had no right to enter upon the premises of such employer to influence these men while they were at work. He had no license, by custom or otherwise, to enter upon the premises of plaintiff, or into the mill, for any such purpose, and he was a trespasser the very moment he did so. He also well knew the character and intent of the crowd he took with him. He was its acknowledged leader, and, in taking them where he had no right to take them, he became responsible for their acts, whether done by his consent or against his protests.

It cannot be said that Barry, according to his own testimony, was there for any lawful purpose. No man has a right to enter upon the premises of another for the purpose

of inducing persons in the employ of that other to leave their employment to the injury of the employer, for the purpose of getting higher wages, or working less hours for the same pay, or for any other reason. The man who so enters is a trespasser. No matter if, by the custom of this free country, license is impliedly given to all persons to enter our private grounds or places of business, that license is nevertheless considered revoked the moment the person so entering interferes unlawfully with our rights or our property. He then becomes a trespasser *ab initio.* Much less can he lead a crowd of 200 men upon my premises, and then excuse himself for their wrong-doing because he told them not to injure my property, when the avowed purpose of their entrance was to interfere between the men in my employ and myself. A crowd of this size is liable at any moment to become a mob, and an excited mob can seldom be controlled by any one. Even their leaders become powerless ofttimes to prevent, not only the destruction of property, but the shedding of blood. Mr. Barry must suffer the consequences of his ill-advised and unlawful entrance with this body of men upon the premises of plaintiff, who has a right to be protected in his property, and to be recompensed for the damages he has suffered.

It does not help the laborer to countenance such acts as these. The unlawful interference with the rights of others, and the destruction of property, cannot aid any one. The law cannot be taken in our own hands to remedy our wrongs by inflicting wrongs upon others. He who goes outside the law to obtain his rights, whether fancied or real, will find in the end that the law he has spurned or violated will yet, and in justice, compel him to respect it, by taking from him what he has gained in disregard of it, and forcing him to recompense those he has illegally damaged by his conduct.

The judgment should be and is affirmed, with costs.

CAMPBELL, C. J., and CHAMPLIN, J., concurred.

SHERWOOD, J. (*dissenting*). This suit is an action of trespass, brought by the plaintiff against four defendants in the circuit court for the county of Saginaw.

The plaintiff in July, 1885, as trustee, was in possession of a steam saw-mill and salt-block on Saginaw river, known as "Wickes Mill and Block," and was at that time operating the same, and for that purpose had in his employment 60 or 70 men. The property was used for the manufacture of lumber and salt. It consisted of a saw-mill, gang and circular saws, with a capacity of 100,000 feet per day, and the salt-block, with a capacity of 125 to 130 barrels per day. The mill is reached from First street, in East Saginaw, by a private road leading to it. Connected with the property is a planing-mill, located some distance from the saw-mill, and between which there is a private way crossing a bayou by a bridge about 800 feet long. On the eleventh day of July, 1885, the mills and salt-block of plaintiff were in full operation, and in good running order.

The plaintiff's declaration is in two counts.

The first count, after stating the kind and situation of the property injured, and that defendants entered unlawfully and with force, together with 200 other persons with whom they were acting in concert, and that steam was the motive power used in the mills to run the machinery, says—

"That when, at the day aforesaid, the defendants, with the other persons aforesaid, broke and entered the plaintiff's said close, they did with force and arms, and in a violent and unlawful manner, shut off the steam from said engines, and thereby caused the machinery in said mill and salt-block to cease to run, and to become motionless; that said defendants, and the others above mentioned, with force and arms, and without lawful authority, extinguished the fires in the furnaces underneath said boilers, so that no steam could be produced, and that this was done in so violent, unlawful, and improper a manner that the said plaintiff's said mill was set on fire by reason thereof, and was damaged thereby to the amount of, to wit, five thousand dollars.

"And the plaintiff further says that the defendants, and

the persons who accompanied them at the date aforesaid, and upon the close of the said plaintiff, with force and arms, and without any lawful authority, stopped from their work, at the said close, the plaintiff's aforesaid employes, and thereby prevented said employes from continuing at the work of manufacturing lumber and salt for the plaintiff in and about his said mill and salt-block; and that by reason of the defendants' wrongful conduct in so trespassing upon the close of the plaintiff with a large number of persons as aforesaid, and by reason of the wrongful conduct of the defendants in stopping the work of the employes of the plaintiff, and in shutting off the steam from said engines, and in extinguishing the fires underneath said boilers as hereinbefore set forth, and by reason of other trespasses then and there done by said defendants upon the close and property of the plaintiff above described, the said plaintiff was wholly unable to continue his said manufacturing of lumber and salt for a long period of time, to wit, the period of six weeks from and after the date aforesaid.

"And the plaintiff further alleges that, by reason of this inability to continue the manufacture of lumber in his said mill during the period aforesaid, the plaintiff suffered loss and damage to a large amount, to wit, the sum of six thousand dollars, and that, by reason of his said inability to continue the manufacture of salt during the period aforesaid, the plaintiff suffered loss and damage to a large amount, to wit, the amount of ten thousand dollars; and, by reason of the aforesaid trespasses of the defendants, the plaintiff was otherwise greatly hindered and obstructed in the conduct of his said business, from which he suffered great loss and damage, at, to wit, the county aforesaid, to the plaintiff's damage of ten thousand dollars."

The second count, charging combination and conspiracy to commit the unlawful acts charged, is as follows:

"Also for that said defendants on, to wit, the eleventh day of July, 1885, did, with a large number of other persons, to wit, two hundred persons, unlawfully and maliciously combine and conspire together to obstruct and impede the regular conduct and operation of the plaintiff's mill and salt-block, situate in the city of East Saginaw, in the county and State aforesaid, and more particularly described as the 'Wickes' mill and salt-block, and the grounds inclosed therewith, which mill and salt-block and grounds were then in the plaintiff's possession; that said defendants, and the other

persons referred to, in pursuance of said combination and conspiracy, and on the day aforesaid, with force and arms, etc., broke and entered the said close of the plaintiff, and then in his possession; that at the time of said trespass there was in said mill and salt-block a large amount of machinery, which was necessary for the purpose of manufacturing lumber and salt, which machinery was run and kept in motion with power furnished by means of steam-engines, with boilers attached in which the steam was produced, and there were at that time at work for the plaintiff, in and about his said mill and salt-block, a large number of employes, to wit, sixty, and that those employes were necessary for the full and proper conduct and operation of the plaintiff's said manufacturing business at his said close.

"The plaintiff further says that, in pursuance of the aforesaid combination and conspiracy, the defendants, and the other persons before mentioned, at the time they so broke and entered said close, went into the engine-room, and assaulted the engineer in the employ of the plaintiff, and shut off, wrongfully and without authority, the steam from said engines, and thereby caused the machinery in said mill and salt-block to cease to run, and to become motionless; that said defendants, and the other persons before referred to, at the time aforesaid, unlawfully extinguished the fires in the furnaces underneath said boilers, and thereby caused said boilers to cool down, so that no steam could be produced; and that said extinguishment of said fires was done in so improper, violent, and unlawful a manner that the plaintiff's said mill became and was set on fire thereby, and damage was done to the same to a large amount, to wit, to the amount of five thousand dollars.

" And the plaintiff further says that said defendants, and the others mentioned, in pursuance of said combination and conspiracy, stopped from their work, in and about the plaintiff's said mill and salt-block and close, the plaintiff's aforesaid employes, and that by reason thereof, and by reason of the shutting off the steam from the engines, and by reason of the extinguishment of the fire in the furnace as aforesaid, and by reason of other trespasses then and there committed in and upon the said close, the plaintiff was hindered and prevented from doing and conducting his said business of manufacturing lumber and salt for a long period of time, to wit, six weeks from and after said day.

" And the plaintiff says that, by reason of his said inability to perform and continue his said business in manufacturing

lumber during the aforesaid period, he suffered loss and damage to a large amount, to wit, six thousand dollars; and that by reason of his said inability to perform and continue his said business in manufacturing salt during the aforesaid period, he suffered damage to a large amount, to wit, the amount of ten thousand dollars; and that, by reason of the aforesaid and other trespasses committed by the defendants at the close aforesaid, said plaintiff was otherwise greatly damaged and injured," etc.

The defendants pleaded the general issue. The cause was tried before Judge Gage by jury, and resulted in a verdict for the plaintiff for the sum of $290.18, upon which judgment was rendered, and defendants bring error.

The first assignment of error raises a preliminary question in the case of some importance, which, if sustained, alone will render a reversal necessary.

From the record it appears that James H. Davitt, a member of the Saginaw bar, had been employed by the board of supervisors of that county to assist the prosecuting attorney in the prosecution of four criminal cases against the defendants, depending upon the same state of facts as in this case, and in one of which the said defendant Thomas B. Barry had just been tried, and that the other three were at the time of the trial of this cause still pending in said court; that the said Davitt assisted the prosecuting attorney upon said trial, and is still assisting him in the prosecution of the other three criminal suits against these defendants; that the said Davitt, while acting and aiding the prosecutor, was called the assisting prosecuting attorney of Saginaw county, and was paid from the county funds by direction of the board of supervisors. It also further appears that the said James H. Davitt is the attorney who commenced this suit, and was the attorney of record, and noticed the cause for trial, and assisted in selecting the jury before which the same was tried.

After the jury was selected, and before being sworn, coun-

sel for defendant Barry objected to the swearing of the jury, and to any testimony being received in the case, because of the facts above stated, which were admitted to be true by counsel for plaintiff. The circuit judge overruled the objection, saying:

"There is no statute in this State that authorizes the appointment of an assisting prosecuting attorney by the board of supervisors of Saginaw county. They have no constitutional authority, certainly, to create such an office as deputy prosecuting attorney. They have authorized Mr. Davitt to assist Mr. Emerick [the prosecuting attorney] in the prosecution; to act as an assistant, and pay him. He can appear here in court the same as any other person."

The jury were then sworn, and the cause proceeded to trial.

The objection of defendants' counsel is based upon How. Stat. § 557, as amended by Act No. 32, Laws of 1883, which reads as follows:

"No prosecuting attorney shall receive any fee or reward, from or on behalf of any prosecutor or other individual, for services in any prosecution or business to which it shall be his official duty to attend, nor be concerned as attorney or counsel for either party, other than for the State or county, in any civil action depending upon the same state of facts upon which any criminal prosecution, commenced or prosecuted, shall depend, or in any action for malicious prosecution brought in consequence of any criminal prosecution commenced or prosecuted during his term of office in the county of which he is prosecuting attorney; nor shall any attorney be permitted to prosecute, or aid in prosecuting, any person for an alleged criminal offense, where he is engaged or interested in any civil suit or proceeding depending upon the same state of facts, against such person, directly or indirectly."

It is also provided by How. Stat. § 559, that "the Supreme Court, and each of the circuit courts may, whenever there be no prosecuting attorney for the county, or when the prosecuting attorney shall be absent from the court, or unable to

attend to his duties, if either of said courts shall deem it necessary," appoint some other person to perform the duties. And in 1879 the Legislature provided "that the prosecuting attorney may, under the direction of the court, procure such assistance in the trial of any person, charged with the crime of felony, as he may deem necessary for the trial thereof," who shall be paid by the county for such service. How. Stat. § 560.

The precise question raised in this assignment of error has never been up in this Court before. The subject, however, has been considered in several cases where objections have been made to attorneys assisting the prosecuting attorney in the trial of criminals. *Meister v. People,* 31 Mich. 99; *Sneed v. People,* 38 Id. 248; *Ulrich v. People,* 39 Id. 245; *People v. Cline,* 44 Id. 290; *Engle v. Chipman,* 51 Id. 524; *People v. Bemis,* Id. 422; *People v. Davis,* 52 Id. 569.

In all these cases the prosecuting attorney, or his assistant, was engaged in the civil cause against the respondent, depending upon the same state of facts involved in the criminal case. The present case is unlike those; the objection here being to the assistant prosecutor acting as attorney for the plaintiff, who is prosecuting the respondent civilly for the same cause, while the criminal suit is yet pending. I have no doubt about the right of the board of supervisors to employ counsel to aid the prosecuting attorney in prosecuting criminals, and so may the prosecuting attorney call to his aid, with the consent of the circuit court, such assistance as he may reasonably require to assist in prosecuting criminals for felony under the above statute; but neither the prosecuting attorney, nor any of his assistants, must be acting as attorney against the respondent in a criminal prosecution depending upon the same facts as in a suit wherein they are prosecuting him civilly.

In the statute relied upon to sustain defendants' objection, it will be noticed that the disability of the prosecuting

attorney or his assistants acting in the civil suit is confined to the parties in the criminal suit (except that they may prosecute civilly for the State or county), in a case involving the same state of facts as in the criminal suit; and, further, that the disability is confined to acting for and not against the respondent in the civil action. In the present case neither of the parties in the criminal case prosecutes. I do not think respondents' objection was well taken. The ruling of the court was right, whether the true reason was given for the same or not.

Upon the trial of the cause it appeared that Charles Sherwood was one of the leaders of the crowd who visited the plaintiff's mill on the occasion of the alleged trespass. He testifies that he was paid to march and carry the banner; that on their way to the plaintiff's mill, they stopped at Patterson's mill. Counsel for plaintiff then asked the witness:

"Didn't you go there for the purpose of inducing the men at Patterson's mill to stop work?"

And also asked the further question:

"Did you hear any of the people in the procession say what their object was in going to that mill, or did you hear the crowd who went to the mill, who was in the procession, say what their object was in going to Patterson's mill?"

The objection of incompetency was interposed to these questions severally. To the first question the witness answered, " No." This, of course, could not have harmed the defendants. To the second question the answer was—

"I heard them say they were going to consult the men in the mills about the ten-hour system."

I think the questions were proper. The declaration charged a combination and conspiracy between the defendants and those who went with them to commit the wrongful acts complained of, and the object and intention of

the alleged conspirators was competent to be shown under the theory of the plaintiff.

It was competent to inquire how long the mill and salt-works remained still. · The loss of the use of the mill and works was part of the damages claimed by the plaintiff as the direct and natural consequence of the trespass alleged against defendants, and whether those acts were committed by the defendants, or under their direction or sanction, was a fact to be passed upon by the jury; and the appearance of the defendants, and all that they said and did, as well as what was done and said by those with them, within their presence or to their knowledge, bearing upon the question, was entirely competent to be put in evidence. Of course, the defendants could not be made liable for the use of the mill any longer than their wrongful acts were the necessary cause of the stoppage.

Mr. W. E. Goodman testified for the plaintiff on the subject of damages, and was allowed to give to the jury a statement of what, in his judgment, the mill and the salt-block would have earned from the eleventh to the twenty-sixth of July, 1885, being the time the mill was idle. The estimate included, of course, the prospective profits during that time. In fact, the prospective profits were allowed under the judge's charge, but they were limited by the charge to a single day. I think this ruling correct, and sustained by the decisions of this Court. *Allison v. Chandler,* 11 Mich. 542; *Gilbert v. Kennedy,* 22 Id. 117; *Welch v. Ware,* 32 Id. 77; *Winchester v. Craig,* 33 Id. 205; *Tracy v. Butters,* 40 Id. 406; *Grand Rapids & I. R. R. Co. v. Heisel,* 47 Id. 393; *Hitchcock v. Pratt,* 51 Id. 270.

What has been said thus far disposes of defendants' first nine assignments of error, except the eighth. Counsel for plaintiff had been permitted to give evidence tending to show that, on the day before the alleged trespass, defendants had been out with the crowd visiting mills, and shutting them

down, and what defendant Barry did and said on that day, evidently for the purpose of showing unlawful intentions and acts of said defendants. Upon the cross-examination, counsel for Mr. Barry asked witness, after he had testified that he heard Barry's remarks to the crowd in the morning,—

"Do you remember what he said to the men that day about observing the law, if anything?"'

This was objected to as immaterial, and the objection was sustained by the court. I think this ruling was error. The objection that it was not proper cross-examination was not made, but, if it had been, it could not have properly prevailed. The testimony was relevant and material, in view of the direct examination of the witness. It bore upon the intentions of the party, and his combining and conspiring with others to commit injury to the property of plaintiff; and, if the plaintiff was entitled to call for so much as made against him occurring on the tenth, the defendant certainly was entitled to whatever made for him, and, whether it would be sufficient to repel the charge of trespass or not, it would have a bearing as to the amount of recovery, and as to the conspiracy to injure property.

The amount of damage the plaintiff ought to recover, or the amount that he should recover for any particular item of injury, was solely for the jury in this case to determine; and the instruction of the court to them that they should find for the plaintiff $78 for damage to the boiler, and $62 for loss of the use of the mill, ought not to have been given. It was error. Both these sums were ascertained from the opinion of witnesses, and that kind of testimony on the subject of damages is always for the jury.

The following portion of the charge of the court was excepted to by counsel for the defendants, viz:

"Now, if those parties,—Mr. Barry, for instance,—who was with those men, if the circumstances were such when

they arrived at the Wickes mill, before he entered upon these premises, that he, as an ordinarily prudent man, had reason to apprehend that they might, some of them, commit acts of violence, he would be responsible for taking the men onto the premises without the consent of the proprietors, under such circumstances. That he had such an apprehension is evidenced by the fact that before they commenced their journey at all he advised them to refrain from any acts of violence; that he had such apprehension is evidenced by the fact that while they were on the premises he himself says that he requested them to remain at some distance from the mill, until he went into the mill personally. They, as he states it, disobeyed his request and followed him into the mill. Now, taking them onto the premises without the permission of the owners of the property, under such circumstances, would render a party who was with them liable for their acts. I might remark that there is evidence tending to show that, after these acts were committed, he went away and took these men to another mill, notwithstanding they had committed these acts of violence. All these circumstances satisfy the court, the evidence not being disputed, as a matter of law, that these defendants are not only liable for the trespass, but are liable for the wrongful acts that others committed there at that time. One is liable for all, although he personally might not have taken any part in it."

In this instruction I think the learned circuit judge went too far. The defendant Barry states that he went with the crowd on the occasion mentioned in the declaration within 200 feet of the mill; that he there halted the men, and told them to remain there until he could see the foreman in the mill, and ask permission to see the men, and learn from them whether the men were satisfied with their present system of working 11 or 11½ hours per day, or whether they desired to join the movement for 10 hours; that they consented to remain; that he had no other business there; that there was no understanding that the crowd should come into the mill after he left them and went in, and he did not know of their going into the mill until he saw them in the fireroom; neither was there any understanding that the Wickes mill should be closed down; that he did not go there for

that purpose, and had no intention of closing down the mill; that he was in the mill about 10 or 15 minutes, looking for the foreman, before the crowd came in; that he believed he had some influence with the men; that they came to the mill against his understanding with them that they would not; and that when they came in he got them out as soon as he could, which took from three to five minutes, and that he did not see them put out the fire.

The testimony, and what it proved, was for the jury. If Barry's statement of his connection with the transaction is true, it would go far to exculpate him; especially is this true when there was testimony showing that the object of taking the crowd with him was for a lawful purpose, and that he urged them to obey the law, and to commit no acts of violence to persons or property.

While it is entirely proper for the circuit judge to refer to the testimony upon any given point, and state to them what it tends to prove, it is not proper for him to single out any particular fact and say to them it is proved by showing some other fact, or that the fact is evidenced by any other in the case; and especially is this so when the fact singled out, and sought to be established, consists of what a person thought or believed at a particular time. The paragraph quoted has this infirmity. It substantially directed the verdict against the defendants, and the error was prejudicial to the defendant Barry, at least, and must necessarily have had its effect upon the defense made by the others.

I have now noticed the principal points argued and urged upon our attention by counsel at the hearing, and for the errors mentioned I think the judgment should be reversed, and a new trial granted.