ALBERT KLUHT, Appellant, v. DAVID MITCHELL, Appellee.

ATTORNEY AND CLIENT: Disability—Appearance for Adverse Party—Timely Motion to Exclude.  An attorney who accepts employment from a plaintiff and by reason thereof obtains from the client a full disclosure of the material facts bearing on the litigation may not thereafter legally appear for the defendant in the same litigation; and a motion made when the cause is reached for trial, to compel the attorney to withdraw his appearance for the defendant, is timely when it is made to appear that the defendant and said attorney had been informed three months prior thereto that such motion would be made if the attorney did not voluntarily retire.

EVANS, PRESTON, and STEVENS, JJ., dissent, on the grounds (1) that the finding of the trial court on conflicting evidence as to the fact

side of the controversy was conclusive on the appellate court, and (2) that the motion was not timely.

Headnote 1:   6 C. J. p. 619.

*Appeal from Clarke District Court.*—HOMER A. FULLER, Judge.

JUNE 24, 1924.

REHEARING DENIED APRIL 8, 1925.

ACTION for alienating the affections of plaintiff's wife. Verdict and judgment for defendant. Plaintiff appeals.—*Reversed.*

*Higbee & McEniry,* for appellant.

*O. M. Slaymaker* and *A. M. Miller,* for appellee.

VERMILION, J.—This is an action for the alienation of the affections of plaintiff's wife. The case was tried by a jury, resulting in a verdict for the defendant. When the case was called for trial in the court below, on December 5, 1922, the plaintiff moved the court to require O. M. Slaymaker, one of the attorneys appearing for the defendant, to withdraw his appearance. In support of the motion he filed the affidavits of himself and one Montgomery. The affidavit of the plaintiff is to the effect that he employed Slaymaker to bring an action for divorce against his wife, Lavada Kluht, and an action against David Mitchell for alienation of his wife's affections; that Slaymaker accepted such employment in both actions, and, relying thereon, and understanding and believing that he represented the plaintiff, both as against his wife and David Mitchell, the plaintiff reposed full confidence in him, and divulged to him all of the facts on which the action against Mitchell was based, and gave him all the information within the knowledge of the witnesses; that Slaymaker asked plaintiff and his witnesses Montgomery and Seeley about the adulterous relations between the wife and Mitchell, and they divulged all the facts within their knowledge; that A. M. Miller, an attorney having an office with Slaymaker, prepared the petition for divorce, at the request of Slaymaker, and when the petition was shown to plaintiff, he said he wished

to begin the action on the ground of adultery, but Miller said that the petition, being based on the ground of cruel and inhuman treatment, would amount to about the same thing; that, a few days after he so employed Slaymaker, the latter told plaintiff that Mitchell had been to see him, and that he did not believe Mitchell was "right in his head," and that Mitchell had admitted that he had had intercourse with plaintiff's wife a number of times, and made a full confession; that, after Mitchell had consulted Slaymaker, the former told plaintiff that Slaymaker had told him that he (Mitchell) had paid plaintiff's wife too much, and he should look to plaintiff for a rebate; that plaintiff discharged Slaymaker, and paid him $25, taking a receipt. The receipt referred to is dated May 17, 1921, and reads as follows: "Received of Albert Kluht $25.00 in full payment of all services." It is signed by both Mr. Slaymaker and Mr. Miller, and below the signatures the following appears: "This covers all services in the matter of the divorce case of Kluht vs. Kluht."

The affidavit of Montgomery is to the effect that he went with plaintiff to Slaymaker's office, and heard Slaymaker and plaintiff talking about a suit against David Mitchell for breaking up plaintiff's home; that Slaymaker asked plaintiff several questions about the case, and told plaintiff that Mitchell had been to see him; that Slaymaker inquired about different facts, and plaintiff was telling him all he knew about the case; that the affiant understood, from all that was said, that Slaymaker was plaintiff's attorney, and was going to bring suit against Mitchell for alienation of the affections of plaintiff's wife.

The motion was resisted on the ground that it was filed too late, and also on the facts. Mr. Slaymaker made a professional statement, that was received without objection, to the effect that, in the September previous, counsel for plaintiff told him they were going to file objections to his appearance in the case, unless he agreed that he would not appear; and that he replied that he did not see any reason why he should not appear; and that no objections or motions were made until the case was called for trial. He denied that he was ever employed by plaintiff relative to any suit or claim he made against Mitchell in regard to alienating the affections of his wife, or that he accepted such

employment. He stated that his only employment was to bring an action for divorce, on the ground of cruel and inhuman treatment, and that plaintiff never at any time divulged any claim against Mitchell, and never said his wife had been guilty of adulterous relations with Mitchell, and did not tell him any of the facts involved in the alienation suit; that, after the suit for divorce was commenced, plaintiff directed him to dismiss it, and paid him $25 for his services in that case alone; that plaintiff's witnesses did not detail any claim against Mitchell.

Mr. McEniry, an attorney for plaintiff, stated professionally that he had told Slaymaker in September that, at the time the case was called for trial, if he insisted on appearing in the case and taking part in the trial, objections would be made to his appearance, on the ground stated in the affidavits; that this statement was made to Slaymaker as a matter of courtesy, and to give him an opportunity to withdraw voluntarily.

There was offered in evidence the transcript of a hearing in regard to temporary alimony in the divorce case of Albert Kluht v. Lavada Kluht, from which it appeared that the defendant in that action was cross-examined by Mr. Slaymaker as to where she and her husband had been living. She replied: "We moved in with Dave Mitchell." She was asked concerning trouble about men coming to the house, and if she did not have a signal to indicate whether her husband was at home or not, which she denied.

The motion was overruled, and the case proceeded to trial. Mr. Slaymaker cross-examined the plaintiff. Objection was made to this, on the ground that he was in possession of confidential statements made by the witness to him in his capacity as an attorney, and he should not be permitted to cross-examine the witness and use knowledge he gained in a confidential way from him as a client in the divorce action and in this matter. The objection was overruled. To both the ruling on the motion and on the objection, exceptions were preserved.

The trial resulted, as has been said, adversely to the plaintiff and appellant. The error assigned upon these rulings by the court is the only question presented on this appeal.

The determination of the question presented depends upon three propositions: (1) Whether appellant's motion came too

late; (2) if not, whether such facts were established as to require that the motion be sustained; and (3) whether prejudice resulted.

The motion was not presented until the case was called for trial in December; but it is conceded that counsel for appellant had stated to Mr. Slaymaker, in September preceding, that such motion would be filed unless he agreed to withdraw from the case. Mr. McEniry's statement is to the effect that he then advised Mr. Slaymaker that the motion would be made when the case was called for trial. Mr. Slaymaker and the appellee, through him, were fully advised that the motion would be made unless the former withdrew from the case,—and he claims that he then declined to withdraw,—in ample time to have enabled appellee to engage other counsel, if he desired to do so. There is no suggestion that anything was said to indicate any abandonment of the announced intention to file the motion when the case was called for trial, if Mr. Slaymaker persisted in his purpose to participate in the trial. On the contrary, his refusal to withdraw presented the very situation under which he was advised that the motion would be made. Moreover, appellee was represented by another attorney, whose right to appear for him was not questioned. Any disadvantage that would have resulted to him from the necessity of proceeding to trial with but one attorney, or of then procuring additional counsel, if deemed advisable, cannot weigh against the manifest prejudice to the appellant of having his opponent represented on the trial by an attorney to whom he had at one time intrusted his cause. Appellee, after assurance that the motion would be made, came to the trial in a situation open to the attack made. We think the motion was not too late to require a ruling on its merits.

Upon the merits of the question, we are constrained to say that the motion should have been sustained. The affidavits filed in support of the motion clearly show the employment of Mr. Slaymaker by plaintiff, not only to procure a divorce, but to prosecute the present action, and the giving to him of all the facts upon which plaintiff relied to sustain both actions, and other circumstances tending strongly to support the claim of an employment. The divorce suit was begun; and the sworn testimony is to the effect that the attorney said he would write

to Mitchell and demand a settlement of the other matter, and that thereafter, he told plaintiff that Mitchell had made a full confession of his relations with plaintiff's wife. The petition in the divorce action, it is true, alleged cruel and inhuman treatment as the ground relied on; but this, plaintiff explains by saying that Mr. Miller, who was associated with Mr. Slaymaker, told him that this was about the same. This is not denied by either Slaymaker or Miller. Indeed, it is significant that the latter made no statement whatever in relation to the matter, and Mitchell himself made no denial of matters shown by plaintiff's affidavit to be within his personal knowledge. Plaintiff is very materially corroborated by Montgomery as to the essential facts. Mr. Slaymaker's statement, while containing a general denial of the truthfulness of the affidavits supporting the motion, and denying any employment in this action and that any facts material to this case were communicated to him, does not otherwise deny that he told plaintiff he would write to Mitchell demanding a settlement, or that he subsequently told plaintiff that Mitchell had been to see him and had made a full confession of his illicit relations with plaintiff's wife. The receipt given for the attorney fee is, in form and phraseology, corroborative of appellant's claim.

It is urged that, this being a law action, the finding of the court has the force of the verdict of a jury and cannot be disturbed if there is any substantial evidence to support it. It was a preliminary matter for determination by the court, affecting the rights of the appellant, and inhered in the result; and, on the record presented, a clear abuse of discretion on the part of the trial court is shown.

That the result was prejudicial cannot be doubted. The disadvantage under which a litigant must labor who is opposed, in the effort to enforce or defend his rights, by an attorney to whom he had, in the confidential relation of attorney and client, made a full disclosure of the facts as he claims them, is obvious. The proposition requires no argument to sustain it. The rule impressing the seal of confidence upon communications between attorney and client is not only for the good of the profession, but for the safety of clients. It operates for the protection of the client whose confidence is violated, not of the attorney who

violates it, or the opponent who profits by its violation. The attorney is, by statute, required "to maintain inviolate the confidence, and, at any peril to himself, to preserve the secret of his client." Code Section 317. *State v. Halstead*, 73 Iowa 376; *Whitcomb v. Collier*, 133 Iowa 303; *State v. Rocker*, 130 Iowa 239; *Harper v. Perry*, 28 Iowa 57; *Messenger v. Murphy*, 33 Wash. 353 (74 Pac. 480); *Weidekind v. Tuolumne Water Co.*, 74 Cal. 386 (19 Pac. 173); *Bowman v. Bowman*, 153 Ind. 498 (55 N. E. 422); Weeks on Attorneys at Law, Section 120; Thornton on Attorneys at Law, Sections 174, 177, 179. In the latter work, after a statement of the rule, with its corollaries, that an attorney is never allowed to change sides in the same case, though at different trials, is found the following succinct summary:

"The good of the profession, as well as the safety of clients, demands the recognition and enforcement of these rules; indeed it is not assuming too much to say that the proper administration of justice would soon cease if attorneys were permitted, after having received full, frank, and free disclosures from clients, to go to the other side, no matter what the excuse which might be offered."

The cases cited by appellee upon the question of prejudice are not in point. In the case of *Trulin v. Plested*, 178 Iowa 220, it was said that the defendant, appellant, was not prejudiced by the appearance for plaintiff, in an action to quiet title, of attorneys who had been consulted by defendant with reference to bringing an action against a codefendant on the ground of fraud in the sale of the land; that it was quite possible for appellant to have a good cause of action against his codefendant, and yet be without a good defense against the right of plaintiff, if a purchaser without notice of the fraud, to have the title quieted in him. In *Shoemake v. Smith*, 80 Iowa 655, an action to foreclose a mortgage, it was said that appellants, who were not the mortgagors, but claimed the land under a title alleged to be superior to the mortgage, by reason of an incorrect description in the record of the mortgage, were not prejudiced by the appearance for plaintiff of attorneys who had at one time entered an appearance for the wife of the mortgagor, but subsequently withdrew. See, also, *Whitcomb v. Collier*, supra. In neither of the

cases cited was the conduct of the attorneys approved, and in neither was the situation at all analogous to that presented by this record.

For the reasons indicated, the case is—*Reversed and remanded.*

Arthur, C. J., Faville and De Graff, JJ., concur.

Evans, Preston, and Stevens, JJ., dissent.

Evans, J. (dissenting). I. I am not able to concur in the majority opinion. The appeal is from the final judgment upon the verdict of the jury in favor of the defendant. The error assigned is upon the ruling of the court in denying a preliminary motion by plaintiff for the exclusion of one of defendant's attorneys from participation in the trial. The ruling complained of was predicated in the court below upon two grounds: (1) That the motion was filed too late; (2) that the facts alleged therein were not sustained by sufficient proof.

The holding of the majority is that the trial court abused its discretion upon each proposition. I am unable to reach such conclusion. The motion was filed after the case was called for trial to a jury. It presented matters of such great importance that an adequate hearing thereon might properly require a very considerable time. This would necessarily result either in holding the selection of the jury in abeyance, or else in a continuance of the case. The case had been at issue for some time. Whether an adequate excuse for the delay of filing was shown, was a question peculiarly within the discretion of the trial court. The excuse offered was that counsel for the plaintiff, a long time previously, had advised Slaymaker that the motion would be filed unless he voluntarily withdrew from the case. Was this excuse so adequate and so compelling as to divest the trial court of its power of discretion? When such warning was given by plaintiff's counsel, it was met with prompt refusal. Nor does it appear that there was ever a moment thereafter when plaintiff or his counsel had reason to believe that defendant's counsel would voluntarily withdraw. What was the efficacy of such warning? It was not a compliance with any rule of practice or pleading. In military parlance, it might be deemed a "demon-

stration,'' or ''gesture.'' It implied a mere threat. The warning purported to be made as a matter of courtesy to counsel under attack. As such, it was purely gratuitous. Such counsel was not entitled to warning, nor had he asked for grace. As a courtesy, it had been promptly rebuffed. What was due from the plaintiff was neither warning nor courtesy, but the motion itself. The defendant was entitled to a timely filing of such motion and a disclosure of the grounds thereof, and was entitled to a reasonable time to meet the same. Such right of the defendant's was not met by a mere warning that a motion would be filed on the eve of trial. I am constrained to the view, therefore, that the discretion of the trial court was not divested, and that it was fairly exercised in the ruling that the motion came too late.

II.  On the question of fact, I am of the opinion also that the evidence was fairly in conflict, and that the finding of fact by the trial judge should be sustained on that ground. The method of trial is not to be commended. The importance of the question involved would have justified a more adequate procedure. Affidavits and professional statements are not a satisfactory form of evidence upon which to settle an issue so important and so sharply defined. But the parties themselves chose the method, and mutually acquiesced therein. Each of them introduced professional statements, without objection by the other. They were doubtless impelled to this course by the fact that they were holding a jury in waiting. This emphasizes somewhat the impropriety in the previous delay in filing the motion. Inasmuch as the proofs were received by the court in the form of affidavit and professional statements, without objection by either party, I see no ground for us to say that the one was any higher order of evidence than the other. In any event, the relative weight or credibility of affidavit and professional statement was necessarily a question for the trial court. It was bound to pass thereon. For us to hold that he should have decided otherwise on the question of fact is to try such issue *de novo* here. I feel constrained, therefore, to say that the record before us does not justify a reversal on error.

PRESTON and STEVENS, JJ., join herein.