MICHEL, Respondent, vs. McKENNA, Appellant, and another, Respondent.

*September 13—November 5, 1929.*

*Michael Levin* of Milwaukee, for the appellant.

*Emmet J. Carrigan* of Milwaukee, for the plaintiff and respondent Jennie Michel.

For the defendant and respondent Frank P. Michel there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *Wm. T. Sullivan.*

Stevens, J. (1) The record presents what the trial judge aptly characterizes as "an ordinary automobile collision case," which involves pure questions of fact for the jury, upon a record that would sustain a finding either way upon the question of which of these drivers was negligent. Were the question whether the evidence sustains the verdict the only one presented by the case, the judgment would be affirmed without further discussion. But the case presents other questions that demand consideration.

(2) The first question arises because plaintiff's attorney, Irving T. Touhey, appeared as attorney in two actions arising out of this collision, in one of which he represented defendant Frank P. Michel in a suit against defendant McKenna, and in the other he represented plaintiff in this action against his own client, defendant Frank P. Michel, and the defendant McKenna. The mere statement of these facts clearly demonstrates that Mr. Touhey was guilty of highly unprofessional conduct.

"It is a well-settled general rule that an attorney cannot represent conflicting interests, or undertake the discharge of inconsistent duties. When he has once been retained and received the confidence of a client, he cannot accept a retainer from, or enter the service of, those whose interests are adverse to his client in the same controversy, or in matters so closely allied thereto as to be, in effect, a part thereof." 1 Thornton, Attorneys at Law, § 174. This is a fundamental rule which arises of necessity out of the confidential and fiduciary character of the relationship between attorney and client. The acceptance of such retainers is absolutely inconsistent with the duties and obligations which the lawyer assumes when he accepts a retainer. It is in fact subversive of the very duties which the retainer imposes upon him.

The rule which prohibits attorneys from accepting adverse retainers "is a rigid one, and designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting him-

self in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent." *Strong v. International B., L. & I. Union,* 183 Ill. 97, 101, 55 N. E. 675, 47 L. R. A. 792, 794–5. "The disadvantage under which a litigant must labor who is opposed, in the effort to enforce or defend his rights, by an attorney to whom he had, in the confidential relation of attorney and client, made a full disclosure of the facts as he claims them, is obvious. . . . The rule . . . is not only for the good of the profession, but for the safety of clients." *Kluht v. Mitchell,* 199 Iowa, 1163, 1168, 199 N. W. 294, 296.

The acceptance of such adverse retainers as those involved in this case must have placed Mr. Touhey in such a position that, to faithfully perform the duty which he owed to the plaintiff, he must almost of necessity violate the attorney's oath that he will "maintain the confidence and preserve inviolate the secrets" of his client, the defendant Frank P. Michel. Sec. 256.29, Stats. The acceptance of such adverse retainers opens wide the doors to collusion and to the practice of the grossest frauds upon courts.

But it does not follow that defendant McKenna has a right to have the judgment reversed because Mr. Touhey was unfaithful to his trust. Mr. McKenna has no right to complain. His confidence was not violated. He had no right to any voice in determining who should represent his adversary in this legal contest. Improper conduct on the part of plaintiff's attorney "cannot be made the basis of a defense on the merits or of a plea in abatement." *Hovel v. Minneapolis & St. L. R. Co.* 165 Minn. 449, 206 N. W. 710, 711.

The party whose rights were violated was the defendant Frank P. Michel. He is the one who had a right to complain. But like other rights possessed by him, he could waive that right by failing to make timely objection. *Web-*

*ber v. Barry,* 66 Mich. 127, 33 N. W. 289, 291; *In re Premier Cycle Co.* 70 Conn. 473, 482, 39 Atl. 800; *Peirce v. Palmer,* 31 R. I. 432, 450, 77 Atl. 201.

Had it been the desire of the husband to object to his attorney appearing for an adverse party in this litigation, he should have promptly brought the matter to the attention of the court and not sat idly by and taken the chance of procuring a favorable verdict before raising that question. If he now desired to raise that question he would not be heard. *Cox v. Barnes,* 45 Neb. 172, 63 N. W. 394, 396; *Wetzler v. Glassner,* 185 Wis. 593, 598, 201 N. W. 740. But it affirmatively appears that the husband had no objection to Mr. Touhey appearing for his wife in this action against him. It is therefore clear that the unprofessional course of conduct pursued by Mr. Touhey presents no ground for reversing the judgment here in question. *Shoemaker v. Smith,* 80 Iowa, 655, 45 N. W. 744, 745.

But the failure of the client to object does not condone the offense of the attorney. The court must still consider the question whether the offending attorney should be permitted to practice his profession. *Murphy v. Riggs,* 238 Mich. 151, 213 N. W. 110, 51 A. L. R. 1303, 1307. "A client cannot consent that an attorney should be released from obligations which the law imposes upon him. A client may waive a privilege which the relation of attorney and client confers upon him, but he cannot enter into an agreement whereby he consents that the attorney may be released from all the duties, burdens, obligations, and privileges pertaining to the relation of attorney and client. . . . Nor can the client's consent or connivance shelter an attorney from unprofessional conduct. Courts owe a duty to themselves, to the public, and to the profession which the temerity or improvidence of clients cannot supersede." *In re Boone,* 83 Fed. 944, 957.

"It is the glory of our profession that its fidelity to its clients can be depended upon. . . . Any lawyer who proves

false to such an obligation, and betrays or seeks to betray any information or any facts that he has attained while employed on one side, is guilty of the grossest breach of trust. . . . In all things he must be true to that trust, or, failing it, he must leave the profession." *U. S. v. Costen*, 38 Fed. 24.

The court is not under the necessity of considering whether the offending attorney in this case should be subjected to discipline. Mr. Touhey's right to practice law was terminated by order of this court entered before this controversy was presented to this court.

(3) Prior to the commencement of this action the defendant McKenna sued the defendant Michel in the civil court of Milwaukee county to recover for the damage to his automobile caused by the same collision in which the plaintiff sustained the injuries that are the basis of her claim in this action. In the civil court the jury found that the defendant Michel was guilty of negligence which caused the damage to the defendant McKenna's car, and that defendant McKenna was not guilty of any want of ordinary care which proximately contributed to the damage done to his car. The judgment entered on that verdict was paid by defendant Michel.

In this action the defendant McKenna interposed a cross-complaint against defendant Michel in which he alleged that the verdict and judgment in the civil court were *res judicata* between these two defendants upon the issues of negligence involved in this action. The verdict rendered in this case is the exact reverse of that rendered in the civil court in that it finds defendant McKenna guilty of negligence and defendant Frank P. Michel not guilty of any want of ordinary care.

As a result of these adverse findings the case presents a very unusual situation. Upon any issue as to the liability of one of these defendants for any injury to the person or property of the other arising out of any want of ordinary care which resulted in this collision, the findings and judg-

ment in the civil court are *res judicata*. That issue cannot be litigated again between these two defendants for the purpose of determining which of these defendants is liable to the other for damages to the person or to the property of the other defendant. *Duignan v. Pawlikowski,* 134 Misc. 22, 235 N. Y. Supp. 125, 126.

But this is an action to recover for injuries sustained by the plaintiff. It in no way involves injuries to either the person or property of either defendant. Plaintiff has a right to litigate the question whether these defendants, or either of them, were guilty of negligence that caused her injuries, without regard to what may have been the findings of the jury in the civil court. The plaintiff is not bound by the verdict and judgment in the civil court because she was not a party to that action.

. The relief demanded in the cross-complaint of defendant McKenna is "that in the event defendants are found *jointly* guilty of actionable negligence" the defendant Michel be required to pay the judgment. By limiting his demand to the case where the defendants are found "jointly" guilty of actionable negligence, defendant McKenna grounded his claim for relief against his codefendant squarely on the rule as to contribution between joint tortfeasors. The right to contribution arises out of a common liability. It is only when joint tortfeasors "have been subjected to an established common liability and one has paid more than his equitable share of such common obligation that the right to contribution arises." *Grant v. Asmuth,* 195 Wis. 458, 461–2, 218 N. W. 834. "The thing that gives rise to the right of contribution is that one of the common obligors has discharged more than his fair equitable share of the common liability." *Wait v. Pierce,* 191 Wis. 202, 226, 209 N. W. 475, 210 N. W. 822.

Under the modern practice one who is alleged to be a joint tortfeasor may, by cross-complaint, have the issue of contribution settled in the same action in which his liability to the plaintiff is determined, in case he is found to be liable

to the plaintiff. *Wait v. Pierce,* 191 Wis. 202, 232, 209 N. W. 475, 210 N. W. 822. But this liberal rule of pleading does not change the fundamental law that there is no right to contribution in the absence of a finding that both defendants are jointly liable. In the absence of a finding of joint liability there is no right to contribution. Joint liability was not established either in the civil court or in this action. In fact both verdicts negative joint liability. Under the rule in *Grant v. Asmuth,* 195 Wis. 458, 460, 218 N. W. 834, it must be held that the civil court judgment is not *res judicata* as to the right to contribution or as to the right of the plaintiff to recover of defendant McKenna. The verdict establishes liability upon the part of the appellant. He is not entitled to contribution from his codefendant.

*By the Court.*—Judgment affirmed.