**UNIVERSAL ATHLETIC SALES CO.**

v.

**AMERICAN GYM, RECREATIONAL & ATHLETIC EQUIPMENT CORPORATION, INC., et al.**

**UNIVERSAL ATHLETIC SALES CO.**

v.

**Larry SALKELD et al.**

**Civ. A. Nos. 71–166, 71–1113.**

United States District Court, W. D. Pennsylvania.

April 26, 1973.

See also, D.C., 340 F.Supp. 899; D.C., 53 F.R.D. 582.

Robert Yeager, Pittsburgh, Pa., Lewis M. Dalgarn, Los Angeles, Cal., for plaintiff.

Robert A. Galanter, Lawrence Zurawsky, Thomas H. Murray, Pittsburgh, Pa., for defendants.

## OPINION AND ORDER REFUSING TO DISQUALIFY COUNSEL FOR DEFENDANT

KNOX, District Judge.

■■ In this case, wherein the proceedings were initiated by attorneys for plaintiff seeking to disqualify counsel for defendant, we have another situation where, as noted by Judge Van Artsdalen in the lower court opinion in Richardson v. Hamilton International Corp., 333 F. Supp. 1049 (E.D.Pa.1971), "different and possibly conflicting policies of the law become apparent". On the one hand, we have the principles recently elucidated by the Court of Appeals for this Circuit in Richardson v. Hamilton International Corp., 469 F.2d 1382 (3d Cir. 1972) that in cases involving conflicts of interests and representation by an attorney of interests inimical to those of a former client wherein it is possible that he might make use of information derived from confidences placed in him by the former client, "not only professional impropriety but also the appearance of impropriety must be avoided". See Canon 9 of the ABA Code of Professional Responsibility and Ethical Considerations with respect to the same. On the other hand, we have the competing public policy that the litigant is entitled to counsel of his own choice. In this case, we are asked by plaintiff to disqualify defendant's counsel who have represented defendant throughout this litigation and for whose services defendant has ·paid. The reason given is a co-defendant, to wit: defendant Larry Salkeld, has resigned or been discharged from his position as president of the defendant and now finds himself at odds with the defendant corporation. He apparently to some extent has sought shelter in the tents of the enemy. If we allow this, we are opening the door to numerous attempts to disrupt relations between a corporation and its counsel by the simple device of having one of the individual defendants become hostile to the corporate defendants and then demand that the corporate defendant's counsel be disqualified. A review of the facts in this case will disclose how these competing interests have arisen.

Civil Action No. 71–166 is a patent infringement action brought by Universal Athletic Sales Company against certain corporations and individuals. Civil Action No. 71–1113 is brought by the same plaintiff against certain named individuals and is a copyright infringement action. The two cases are being considered together for this purpose. Among the defendants are the ones with which we are particularly concerned. viz: Super Athletics Corporation, Larry Salkeld, Donald Pinchock and S. David Brodsky, individuals d/b/a Super Athletics Corporation. Defendant Salkeld was President of Super Athletics Corporation until April 1972 when his services were terminated.

The firm of Brown, Murray, Flick & Peckham has appeared as attorneys for these defendants including another defendant American Super Gym Corporation which is alleged to have been wholly owned by defendant Salkeld. On May 23, 1972, these attorneys filed a motion for leave to withdraw as counsel for Salkeld and American Super Gym and the court entered an order granting the motion subject to written objections being filed by any party on or before June 5, 1972. No such objections were filed and the withdrawal thereby became effective.

On August 24, 1972, depositions of Salkeld were taken. By this time, Lawrence G. Zurawsky, Esquire, entirely independent of the Brown, Murray firm, had been engaged to associate himself with them as trial and preparation counsel. During the course of these depositions, he sought to cross examine Salkeld. Salkeld objected to the cross examination claiming that he had formerly been a client of these attorneys and had divulged to them certain confidential information and therefore it was improper

for them to cross examine him. As noted in our order of January 16, 1973, it seemed that they were to confront him with rebutting evidence and seek to refute his testimony relying upon information in their possession as attorneys for Super Athletics. After some altercation between counsel, *plaintiff's counsel* then filed a motion to disqualify all of defendant's counsel including Zurawsky for conflicts of interest. We have previously heard arguments on this, have required Salkeld to state definitely on the record whether he personally objected to defendant's counsel continuing as attorney for Super Athletics and the other two individual defendants (which he did) and have also held an evidentiary hearing to be certain we were aware as to the exact extent of the conflict of interests before this difficult question was decided. Many of the basic facts are set forth in our memorandum and order of January 16, 1973, in which it was pointed out that this is not a subsequent piece of litigation as in most of the cases reported on this subject where an attorney who had represented one party appears in a subsequent law suit as attorney for the other party using confidential information derived from the first suit. There is no crossclaim pending by or against Salkeld. This question arises in the same suit where the attorneys initially appeared for both the corporate officer and the corporation. In our prior memorandum, it is stated that the attorneys appeared about to use confidential information derived by Salkeld while he was their client for the purpose of discrediting them and to refute his testimony. It was indicated that if this were true, it would probably be a violation of the Code of Professional Responsibility. See DR 5–105(a), (b) and (c) and EC 5–15 and 16.

Salkeld thereupon stated categorically on the record that he objected to defendant's counsel continuing their representation of Super Athletics, Pinchock and Brodsky.

At the hearing that we held on this matter, Salkeld took the position that the confidential information which he claimed had been imparted to Attorney Murray should not be brought out either on examination or cross examination since it amounted to a confidential communication between him and his attorney Mr. Murray. The claim was pressed that such confidential information should not be disclosed to the court even in camera and even the court had no right to determine what was a confidential communication between a client and his attorney. We are thus left in the dark as to exactly what this confidential information is which will be used with impropriety by defense counsel.

On the other hand, Attorney Murray took the stand and testified that after the instant law suit was filed in March, 1971, he was retained by Super Athletics Corporation on behalf of itself and its officer Salkeld. He said he never received any compensation from Salkeld but was paid wholly by Super Athletics. Murray categorically denied that Salkeld ever told him anything which was not already contained in the deposition taken in August 1972, and he told him nothing of any secret things about the patent or any patentable ideas. He states that Salkeld made no disclosure to him concerning sending out the wall charts after a previous injunction had been issued in the copyright case 71–1113 for which a contempt citation is pending against Salkeld.

Upon consideration of all the testimony taken at this hearing, we find that the testimony of Attorney Murray is true and that defense counsel are not in possession of any confidential information which could be used by them to the detriment of Salkeld. Since at the present time there appears to be no possibility of the use of confidential information supplied by a former client to the former client's detriment in this case, we will permit defense counsel to continue as attorneys for Super Athletics Corporation, Pinchock and Brodsky.

We warn them, however, that if the court is in error as to this and if at any future time a violation of confidential communications appears in this case which may be used to the detriment of Salkeld, we will at that time consider a further petition for disqualification.

■ In arriving at this conclusion, we have considered thoroughly the decision of the Court of Appeals for this Circuit in Richardson v. Hamilton International Corp., 469 F.2d 1382 (1972). We agree that an attorney should not be tempted "in the interest of his new client to take advantage of information derived from confidences placed in him" by his former client, and that it is the duty of the district court to examine the charges. As we stated in memorandum of January 16, 1973, "There is no question that plaintiff acted properly in bringing this matter to the court's attention". Even if plaintiff's counsel had not brought the matter to the court's attention, it appears to be the court's duty in a situation of this kind to act *sua sponte* to determine if a breach of professional ethics has occurred or is about to occur. A lawyer owes a duty "to avoid not only professional impropriety but also the appearance of impropriety". We also note from Richardson that this is a matter for the lower court's discretion which of course should not be abused.

■ In arriving at the conclusion contained in this order, we have considered many factors. First, this case is unlike any other reported case that we have discovered since here the conflict arises in the original law suit itself. This is not a case where an attorney represented one client in a former piece of litigation and thereafter takes a law suit against him in which confidential information derived in the first case can possibly be used. This was the situation in Richardson. Nor is it a case where one client may wind up with a judgment against another as in Jedwabney, infra. Second, while not of too great importance, we have considered the factor that the Brown, Murray office was paid

to act as counsel by Super Athletics, that Salkeld as its President paid nothing but instead was given an apparently free legal ride on the back of Super Athletics. Certainly, if the reverse of this situation were true and it appeared that counsel had been paid by Super Athletics and after having been paid by them, proposed to undertake Salkeld's representation after the parting of the ways and used confidential information of Salkeld's against Super Athletics, we would have much less hesitancy in declaring a conflict of interest which would result in disqualification. Three, we do not find it equitable to permit a situation to develop whereby a corporate officer who is also co-defendant in a case with the corporation can either voluntarily or involuntarily terminate his relationship with the corporation and then turn around and cause the disqualification of corporate counsel. This would lead to an intolerable situation as a result of which house counsel or corporate counsel who had acted for a corporation over a long period of years might be forced to disqualify themselves as a result of the acts of a disgruntled employee or officer. Fourth, we do not believe that either Richardson or any of the other reported cases in this area decided by our Court of Appeals or by the Supreme Court of Pennsylvania mandate a result such as is sought by plaintiff's counsel and Salkeld in this case. In Otis and Company v. Pennsylvania R. Co., 57 F.Supp. 680 (E.D.Pa.1944), Judge Kalodner (later Circuit Judge) said:

"In my opinion there is no reason to require removal of counsel as petitioned. The corporation, as an interested party having a right to appear and defend, may select such counsel as it chooses. Moreover, there is no allegation of any breach of confidence or trust of which either the corporations or the individual defendants complain. In any event, it is doubtful whether plaintiff is the proper party to complain, since the attorneys hold no confidence belonging to it. See 7 C.J.S., Attorney and Client, § 47, p. 827;

Ferguson v. Alexander, Tex.Civ.App., 122 S.W.2d 1079; Michel v. McKenna, 1929, 199 Wis. 608, 227 N.W. 396. Moreover, there are many stockholders' suits on record in which the same counsel represented both the individual and corporate defendants. See Riley v. Boynton Coal Co., 305 Pa. 364, 157 A. 794; Bonini v. Family Theatre Corp., 327 Pa. 273, 194 A. 498; Beck, v. O'Laughlin, 337 Pa. 416, 11 A.2d 867; Steckler v. Pennroad Corp., D.C., 44 F.Supp. 800, affirmed 3 Cir., 136 F.2d 197, cert. den. 320 U.S. 757, 64 S.Ct. 64, 88 L.Ed. 451. See also Elberta Oil Co. v. Superior Court, 1930, 108 Cal.App. 344, 291 P. 668 (where the court specifically noted the fact that counsel represented the corporation and the individual defendants who· were charged with profiting at the corporation's expense).

"For the reasons stated the plaintiff's motion to strike the answer of the corporate defendants and to remove counsel is denied."

This decision was affirmed per curiam by the Court of Appeals for this Circuit at 155 F.2d 522.

While in the case before us there is allegation of breach of confidence or trust, the exact nature of this has not been pointed out and in the present state of the record, we find that it does not exist.

 In arriving at our conclusions in this case, we have also fully considered the decisions of the Supreme Court of Pennsylvania in this area. While we have here a suit involving federal matters in a federal court, nevertheless we are dealing with Pennsylvania counsel subject also to the discipline of the Pennsylvania courts. The Supreme Court of Pennsylvania has recently organized a Disciplinary Board to handle all such matters against members of the Pennsylvania Bar and this court under its new rules effective April 1, 1973, has provided that such matters should in the first instance be referred by this court to the Disciplinary Board of the Pennsylvania Supreme Court for investigation and recommendation. This, of course, in no way absolves this District Court of its duties as described in Richardson, supra, "to examine the charge since it is that court (district court) which is authorized to supervise the conduct of the members of its bar".

The leading case in recent years in Pennsylvania is Jedwabney v. Phila. Trans. Co. et al., 390 Pa. 231, 135 A.2d 252 (1957) where it was held that the lower court was within its rights to grant a new trial where an attorney represented both the plaintiff and additional defendant and the case wound up with a verdict in favor of the plaintiff and against this additional defendant. The court there fully recognized the duty of counsel to refrain from undertaking representation which involved conflicting interests.

Next, we have Seifert v. Dumatic Ind. Inc., 413 Pa. 395, 197 A.2d 454 (1964) where each counsel moved for the removal of the other claiming conflicts of interests resulting from dual representation. The court referred to Canon 6 of the former Canons of Professional Ethics forbidding "the subsequent acceptance of retainers or employment from others adversely affecting any interest of the client with respect to which confidence has been imposed". The court specifically pointed out that the conflict of interest question may be raised by the court sua sponte but then went on to hold that under the facts present they were unable to discern any interest of one party which would come in conflict with the position of the other party in the underlying cause of action. More recently, we have Middleburg v. Middleburg, 427 Pa. 114, 233 A.2d 889 (1967), in which the court again recognized the rule against conflict of interest and stated as was stated in Richardson, supra, "Moreover the test of a conflicting interest is not the actuality of conflict, but the possibility that conflict may arise". That case, however, ended in a quashing of the appeal, the court determining that

disqualification of counsel is an interlocutory order and not appealable.

As above stated, we have considered all the factors involved in a case such as this and conclude that there is no demonstration that conflict of interest either actually or possibly exists in the instant case. Since this is the same, not a subsequent case, where the lawyer has changed sides and is taking a claim against his former client, it is the court's opinion that we should not permit a former corporate officer by being discharged or resigning to put himself in a position where he can force disqualification of corporate counsel. If, however, our appraisal of the situation as to possibly conflicting interest is in error, we will insert in the order a provision giving leave to plaintiff or Salkeld to again bring the matter to the court's attention should a later actual conflict of interest develop during the course of this litigation, at which time we will further consider a petition to remove counsel. An appropriate order will be entered.