THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v.
THE NEW YORK, CHICAGO AND ST. LOUIS RAILROAD
COMPANY, Appellant.

While it is competent for the legislature, in an act providing for the con-
solidation of domestic corporations, to declare what shall be the status
of the corporations availing themselves of its provisions, and also of the
consolidated companies, it has no power to authorize the consolidation
of domestic corporations with those of another state, without the consent
of the legislature of that state, in such manner as to vest, in case of such
a consolidation, the franchises, rights and property of the foreign cor-
poration in the consolidated company, or to authorize any change or
conversion of the stock of the constituent corporations into the stock
of the consolidated company, or to confer any exclusive authority for
their consolidation.

The act of 1869 (Chap. 917, Laws of 1869), authorizing the consolidation
of certain railroad companies, upon such a consolidation, regards the
consolidated company as a new corporation; but where the proposed
consolidation is of a domestic corporation and one of another state, the
consent of the legislature of that state is requisite to its accomplishment.

While, therefore, it seems when two or more domestic corporations are so
consolidated, the resulting entity may properly be said to be a corpora-
tion "incorporated by and under a general and special law of this state,"
within the meaning of the "act to tax stock corporations for the privilege
of incorporation" (Chap. 143, Laws of 1886), and so subject to the tax
imposed by said act, when the consolidation is of a domestic corporation
with a corporation of another state whose legislature has sanctioned
such a consolidation, as the new corporation owes its existence, not to
the state law alone, but to the concurrent legislation of the two states,
it is not liable to such tax.

People v. N. Y., C. & St. L. R. R. Co. (61 Hun, 66), reversed.

(Argued October 27, 1891; decided January 20, 1892.)

APPEAL from judgment of the General Term of the Supreme
Court in the third judicial department, entered upon an order
made the first Tuesday of May, 1891, directing a judgment in
favor of plaintiff upon a case submitted under sections 1279–
1281 of the Code of Civil Procedure.

The case was submitted to the General Term upon an agreed
statement of facts substantially as follows :

The New York, Chicago and St. Louis Railroad Company
was organized under the general railroad laws of New York,

June 16, 1887, with a capital stock of $4,500,000. The railroad extended from Buffalo to the state line between New York and Pennsylvania. Before filing the certificate of incorporation with the secretary of state, $4,625, being one-eighth of one per centum upon the amount of capital stock, was paid to the state treasurer, as required by section 1 of chapter 143 of the Laws of 1886.

On the 15th day of August, 1887, an agreement for the consolidation of the above-named company with a company organized under the laws of Pennsylvania, owning a railroad extending from the westerly terminus of the above-named company's railroad to the westerly line of Pennsylvania, and having a capital stock of $3,000,000, was filed with the secretary of state. No tax was required to be paid before the agreement for consolidation was filed, and none was in fact paid. The agreement provided that the consolidated corporation should be called the New York, Chicago and St. Louis Railroad Company.

On the 27th day of September, 1887, an agreement for the consolidation of the last-named company with companies organized under the laws of Ohio and Indiana, owning railroads extending from the westerly line of the New York, Chicago and St. Louis Railroad Company's railroad to the westerly line of Indiana, and having together a capital stock of $22,500,000, was filed with the secretary of state. No tax was required to be paid before the agreement for consolidation was filed, and none was in fact paid. The agreement provided that the consolidated corporation should be called the New York, Chicago and St. Louis Railroad Company.

The capital stock of the first consolidated corporation was declared to be $7,500,000, which was the same as the aggregate capital of the New York and Pennsylvania corporations, and the capital stock of the second consolidated corporation — the defendant — was declared to be $30,000,000, which was the same as the aggregate capital of the New York, Pennsylvania, Ohio and Indiana companies.

The consolidation was effected, as far as the state of New

York was concerned, under the provisions of chapter 917 of the Laws of 1869.

The question now presented is whether the defendant must pay a tax of one-eighth of one per centum upon the amounts mentioned in the agreements of consolidation as the capital stock of the consolidated companies; or, what is the same thing, upon the aggregate capital stock of the New York and Pennsylvania companies which entered into the first agreement, and of the New York, Pennsylvania, Ohio and Indiana companies which entered into the second agreement.

Upon these facts judgment was rendered against the defendant for $57,856.25, which is one-eighth of one per centum upon the aggregate capital stock above mentioned; and it was also adjudged that defendant should be restrained from exercising any corporate powers until that amount should be paid.

Further facts are stated in the opinion.

*Samuel E. Williamson* for appellant.   If the new company, resulting from the consolidation of a railroad company organized under the laws of this state with a railroad organized under the laws of another state, is a corporation in any sense, it is not a corporation " incorporated by or under any general or special law of this state," within the meaning of chapter 143 of the Laws of 1886.   (*O. & M. R. Co.* v. *People*, 133 Ill. 467; *C. & N. W. Co.* v. *Auditor-Genl.*, 53 Mich. 79; 46 id. 225; Laws of 1869, chap. 917, § 6.)   The consolidation of railroad companies organized under the laws of several states does not effect the incorporation of a new company in all or any of the states, and, therefore, the defendant is not liable for the organization tax claimed.   (*State* v. *A. & N. R. Co.*, 24 Neb. 143; *C. R. R. Co.* v. *Georgia*, 22 U. S. 665; *Shields* v. *Ohio*, 95 id. 319; *R. R. Co.* v. *Georgia*, 98 id. 359; *R. R. Co.* v. *Maine*, 96 id. 499; *Meyer* v. *Johnston*, 64 Ala. 603; *Jones* v. *F. R. R. Co.*, 50 Hun, 310; *Day* v. *Worcester*, 151 Mass. 302; *N. & C. B. Co.* v. *Wooley*, 78 Ky. 523; *N. R. R. Co.* v. *B. & L. R. R. Co.*, 136 U. S. 356;

Jones on Mort. §§ 361, 363; *Williams* v. *W. U. T. Co.*, 93 N. Y. 162.) If the defendant is liable for an organization tax, it is liable only for one-eighth of one per cent of the capital stock authorized by this state, which in the case of each consolidation is the amount of the capital of the constituent company incorporated in this state. (46 Mich. 224.) If the statute makes the defendant liable for a franchise tax upon that part of the capital stock represented only by the property of constituent companies organized under the laws of other states, it is void, as being in conflict with the Fourteenth Amendment of the Constitution of the United State. (*State Treasurer* v. *Auditor-Genl.*, 46 Mich. 224; *R. R. Co.* v. *Pennsylvania*, 15 Wall. 300; *R. R. Co.* v. *Jackson*, 7 id. 262.) The state is not entitled to a money judgment for the tax and interest. (*People* v. *Cook*, 110 N. Y. 443.)

*Charles F. Tabor, Attorney-General,* for respondent. Upon filing the papers constituting the agreement and proceedings for the consolidation of the New York, Chicago and St. Louis Railroad Company No. 2, and of the Cleveland and State Line Railroad Company, and the Fort Wayne and Illinois Railroad Company, a new corporation was created also called the New York, Chicago and St. Louis Railroad Company, the defendant in this action, which was incorporated under and by virtue of the laws of the state of New York, and as such became liable to pay the organization tax imposed by the act of 1886. (*People ex rel.* v. *Cook*, 10 N. Y. S. R. 650; 110 N. Y. 443; *McMahon* v. *Morrison*, 16 Ind. 172; *R. & M. R. R. Co.* v. *F. L. & T. Co.*, 49 Ill. 349; *A. & R. A. L. Co.* v. *State*, 63 Ga. 483; *State of Ohio* v. *Sherman*, 22 Ohio, 411; *Ridgeway Township* v. *Griswold*, 1 McCrary, 151; *Clearwater* v. *Meredith*, 1 Wall. 25; *Shields* v. *Ohio*, 95 U. S. 319; *R. R. Co.* v. *Maine*, 96 id. 499; *R. R. Co.* v. *Georgia*, 98 id. 359; *St. Louis Ry. Co.* v. *Berry*, 113 id. 465; *P. C. Co.* v. *M. P. R. R. Co.*, 115 id. 594; *People* v. *Rice*, 57 Hun, 486.) The defendant is, in fact, a new corporation. (3 R. S. [8th ed.] 1723.) Powers

of a corporation organized under a legislative charter are only such as the statute confers, and the enumeration of them implies the exclusion of all others. (*Abbott* v. *J. R. R. Co.*, 80 N. Y. 27; *Thomas* v. *R. R. Co.*, 101 U. S. 71; *C. T. Co.* v. *P. P. C. Co.*, 139 id. 24.) Sections 1 and 6 of the act of 1869 clearly show that the legislature intended to include foreign corporations as well as domestic corporations among the corporations entitled to the benefits of the provisions of this act. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows. (*H. Ins. Co.* v. *New York*, 134 U. S. 600; *Doyle* v. *C. Ins. Co.*, 94 id. 535; *New York* v. *Miln*, 11 Pet. 139; *Presser* v. *Illinois*, 116 U. S. 268; *Embury* v. *Conner*, 3 N. Y. 511; *Sherman* v. *McKeon*, 38 id. 267; *Phyfe* v. *Elmira*, 45 id. 103; *People* v. *Cook*, 110 id. 449.) This court having already determined the effect upon domestic corporations consolidating under statutes similar to that of 1859, no other or different rule can or ought to be adopted in construing the statute of 1869 so far as it applies to corporations of other states consolidating with domestic corporations of this state. (*P. Co.* v. *S. L. & A. R. R. Co.*, 113 U. S. 296; *M.*, etc., *R. R. Co.* v. *Alabama*, 107 id. 584; *Clark* v. *Barnard*, 108 id. 451; *R. R. Co.* v. *Harris*, 12 Wall. 82; *R. R. Co.* v. *Whitton*, 13 id. 270; *R. R. Co.* v. *Vance*, 96 U. S. 450; *M. & C. R. R. Co.* v. *Alabama*, 107 id. 581.) The liability of the defendant is not affected by the provisions of the sixth section of the act of 1869. (Laws of 1886, chap. 143; *People* v. *E. T. Co.*, 96 N. Y. 387; *People* v. *H. S. Co.*, 105 id. 76.)

Andrews, J. This case depends upon the question whether the defendant is, within the meaning of chapter 143 of the Laws of 1886, a corporation "incorporated by or under any general or special law of this state." The act of 1886, is entitled "An act to tax stock corporations for the privilege of organization." The material part of the first section is as

follows : " Section 1. Every corporation, joint-stock company or association incorporated by or under any general or special law of this state, having capital stock divided into shares, shall pay to the state treasurer, for the use of the state, a tax of one-eighth of one per centum upon the amount of capital stock which said corporation, joint-stock company or association is authorized to have, and a like tax upon any subsequent increase thereof. The said tax shall be due and payable upon the incorporation of said corporation, joint-stock company or association, or upon the increase of the capital thereof, and no such corporation, joint-stock company or association shall have or exercise any corporate powers until the said tax shall have been paid. And the secretary of state and any county clerk shall not file any certificate of incorporation or articles of association, or certify or give any certificate to any such corporation, joint-stock company or association until he is satisfied that the said tax has been paid to the state treasurer."

The original corporation in this state, known as the New York, Chicago & St. Louis Railroad Company, organized in 1887, was a purely domestic corporation. It became a corporation by taking the proceedings and filing its articles of association prescribed by the General Railroad Act of 1850. It paid the organization tax on its capital of $4,500,000, and constructed its road from Buffalo to the Pennsylvania state line as authorized by its charter. In the same year it consolidated with the Erie and State Line Railroad Company, a Pennsylvania corporation having a capital of $3,000,000. The consolidated company took the name of the New York corporation and its capital stock was the aggregate of the capital stock of the two constituent corporations, viz.: $7,500,000. Later in the same year (1887) the first consolidated company consolidated with certain railroad corporations then existing in Ohio and Indiana, having an aggregate capital of $22,500,000. The company resulting from the second consolidation also took the name of the "New York, Chicago & St. Louis Railroad Company," the aggregate capital of which was $30,000,000, which was the

sum of the combined capital of all the constituent companies. The several roads thus consolidated formed a continuous line of railroad extending from Buffalo in this state to Chicago in the state of Illinois.

The claim on the part of the people is that these consolidations having been effected under the authority of chapter 917, of the Laws of 1869, entitled "An act authorizing the consolidation of certain railroad companies," there was by force of said act a new incorporation created on each consolidation, and that the resulting company was a corporation "incorporated under a general or special law of this state," within chapter 143 of the Laws of 1886, and, therefore, bound to pay the organization tax imposed by that act. The state, therefore, demands and has recovered the sum of $57,856.25, which is one-eighth of one per centum on $7,500,000, the capital of the first consolidated company, and one-eighth of one per centum on $30,000,000, the capital of the second consolidated company, with interest added. By the judgment below the state of New York exacts a tax on the portion of the capital stock of the consolidated company contributed by the Pennsylvania, Ohio and Indiana corporations, of about $50,000, for the privilege of consolidation with the New York corporation. If this is required by the true construction of the act of 1886, the judgment must be affirmed, however unjust or impolitic the exaction may seem to be.

As a tax on property, it would be clearly invalid, for as said by Judge Cooley in the case of *State Treasurer* v. *Auditor-General* (46 Mich. 224), referring to a consolidated railroad from Buffalo to Chicago, which included a Michigan corporation, "the state can no more tax the whole capital which represents the track from Chicago to Buffalo, the rolling stock and other equipments, than it can tax the whole track and equipments." But the tax imposed by the act of 1886, being a tax on the privilege of consolidation, and not a property tax, the power of the state to subject corporations availing themselves of the act, to any conditions the legislature may see fit to impose cannot be questioned.

We come, then, directly to the question whether the defendant is a corporation "incorporated by or under any general or special law of this state," within the meaning of the act of 1886. The only incorporating act of this state to which the incorporation of the defendant can be referred, is the consolidation act of 1869. That act provides in great detail for the consolidation of railroad corporations "organized under the laws of this state, or of this state and any other state," operating a railroad either wholly within, or partly within and partly without the state, and forming a continuous or connected line of railway. The first section authorizes roads so situated to merge and consolidate their "capital stock, franchises and property." The second section prescribes that the consolidation shall be effected by means of an agreement between the constituent companies, which shall prescribe the means and conditions of the consolidation, the name of the "new" corporation, the names of the first directors and officers, the number of shares of the capital stock and the amount and par value thereof, and the manner of converting the capital stock of the constituent companies into that of the new corporation, with a proviso that in no case shall the capital stock of the company formed by the consolidation exceed the aggregate sum of the capital stock of the companies so consolidated, and the section provides that the agreement of consolidation, when made and certified, shall be filed in the office of the secretary of state. The third section declares that on perfecting. and filing the agreement, the "parties hereto shall be deemed and taken to be one corporation by the name provided in said agreement, but that such act of consolidation shall not release such new corporation from any of the restrictions, disabilities or duties of the several corporations so consolidated." The fourth section purports to vest in the "new corporation" the rights, privileges and franchises, and all property, real and personal, debts and stock subscriptions of the corporations so consolidated. The fifth section continues the constituent companies in existence to preserve the rights and liens of creditors, and authorizes suits to be maintained against the

new corporation in the courts of the state. The sixth section prescribes that taxes on the capital stock of the "new corporation" shall be apportioned in the ratio that the number of miles of the railroad in this state bears to the number of miles without the state.

The act plainly regards a railroad formed by the consolidation of several roads ·as a new corporation. In the case of *People ex rel. Phonograph Co.* v. *Rice* (11 N. Y. Sup. 249), affirmed in this court in 1891, there had been a consolidation of two domestic manufacturing companies organized under the laws of this ·state, under the Consolidation Act (Chapter 960 of the Laws of 1867), applicable to such corporations, and it was held that a new corporation was created by the consolidation, and that it was liable to the organization tax under chapter 143 of the Laws of 1886. This decision accords with the general current authority to the effect that statutes for the consolidation of domestic corporations are to be treated as acts of incorporation, and that on consolidation being effected under their provisions, the constituent companies, unless such an intention is excluded by the language of the statute, are deemed to be dissolved, and their powers and faculties to the extent authorized become vested in the consolidated company as a new corporation created by the act of consolidation. (*State* v. *Maine Central R. R. Co.*, 66 Me. 488; *S. C.*, 96 U. S. 499; *Bishop* v. *Brainerd*, 28 Com. 289; *McMahan* v. *Morrison*, 16 Ind. 172; *Clearwater* v. *Meredith*, 1 Wall. 25; *Central Railroad & Banking Co.* v. *Georgia*, 92 U. S. 665; *Railroad Co.* v. *Georgia*, 98 U. S. 359.)

These decisions are consistent with principle. The state has plenary power in the creation of domestic corporations, subject only to constitutional restraints. It may endow them with such power and faculties as it deems proper. It may control and regulate them, and they are, under powers now almost uniformly reserved, liable to have their charters altered, amended or repealed. It is perfectly competent for the legislature, in consolidation acts, to declare what shall be the status of the domestic corporations which shall avail themselves of

their provisions, and also of the consolidated company. Whether the new consolidation shall create a mere business union between the constituent companies, leaving them in existence as corporations, or whether it shall operate as a surrender of the corporate franchises and an extinguishment of their corporate existence, and as creating a new corporation combining to the extent permitted by the act, the powers of the corporations out of which it was formed, and vesting in it the property of the constituent companies, depends upon the legislative intention. Where under the act the result of the consolidation is a new corporation in place of two or more domestic corporations, the resulting entity may properly be said to be a corporation "incorporated by or under a general or special law of this state," and, therefore, subject to the organization tax prescribed by chapter 143 of the Laws of 1886.

But the constituent companies which were united to form "The New York, Chicago and St. Louis Railroad Company," with the exception of the New York company of the same name, were not domestic corporations. Their corporate powers and life were derived from the legislatures of other states. They were and are in no respect subject to the laws of this state, but wholly and exclusively to the laws of their domicile. It was under those laws that the respective roads were constructed and operated. The laws of their jurisdictions fixed their capital, conferred and defined their franchises and powers, and their power to enter into any consolidation with other roads, either within or without the states which incorporated them, depended upon the affirmative grant of such power by the state creating them. The Consolidation Act of 1869, it is true, assumes upon the consolidation not only of domestic corporations, but of corporations of different states, to transfer to and vest in the consolidated company formed under its provisions all the "rights, privileges, exemptions and franchises and property" of each of the constituent companies. But the legislature of this state was impotent alone to accomplish this result. It could not vest the franchises, rights and property

of the Pennsylvania, Ohio and Indiana companies in the consolidated company, nor authorize any change or conversion of the stock of the constituent corporations into the stock of the consolidated company, nor confer any exclusive authority for their consolidation. All it had the power to do, and all that the act of 1869 in effect did do, was to authorize the New York corporation, upon like consent being given by Pennsylvania, Ohio and Indiana, to merge the franchises, property and interests of the several constituents into what would practically be one corporation. When this was sanctioned by the legislatures of the respective states, and the proper formal proceedings were taken, then, and not till then, could a new body be created. Whether the result would be a new corporation *de jure* is a mooted question. (See *Muller* v. *Dows*, 94 U. S. 444; *Shields* v. *Ohio*, 95 id. 319; *St. L., I., M. & S. R. Co.* v. *Berry*, 113 id. 465; *Nashua & L. R. R. Co.* v. *Boston & L. R. R. Co.*, 136 id. 356.)

But assuming that result to follow, the new corporation would owe its existence not to the state of New York alone, but to the states of New York, Pennsylvania, Ohio and Indiana. It would not be in any strict or even just sense a corporation "incorporated by or under any general or special law of this state," within chapter 143 of the Laws of 1886. The Consolidation Act does, indeed, confer new corporate powers upon the New York corporation. Except for that act it could not have entered into the agreement of consolidation. So, also, it purports to grant corporate powers to the consolidated company. But it remains true, nevertheless, that concurrent legislation of the other states was essential to the completion of the consolidation, and it is to be inferred from the agreed statement that similar legislation to the act of 1869 was enacted in the several states.

We are of opinion that the proper and equitable construction of the act of 1886, imposing an organization tax on railroads "incorporated under the laws of New York," does not bring the defendant within its provisions. This conclusion has support in the cases of *State Treasurer* v. *Auditor-Gen-*

*eral* (46 Mich. 224); *C. & N. W. Railway Co.* v. *Aud.-Genl.* (53 id. 79), and *O. & M. Railway Co.* v. *People* (123 Ill. 467).

We desire to refer also to the dissenting opinion of Landon, J., in the court below.

The judgment of the General Term should be reversed and judgment ordered for the defendant on the case presented.

All concur.

Judgment reversed. ———————