## NEW YORK TELEPHONE COMPANY, A CORPORATION, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT, DEFENDANT.

Argued October 9, 1931—Decided April 21, 1932.

Before Justices TRENCHARD, DALY and DONGES.

For the prosecutor, *Wall, Haight, Carey & Hartpence* (*Thomas G. Haight,* and *Charles T. Russell,* of the New York bar, of counsel).

For the defendant, *William A. Stevens,* attorney-general (*John Solan,* of counsel).

PER CURIAM.

This writ brings up for review a license or franchise tax amounting to $26,250 imposed for the year 1929 against the prosecutor by the state board of taxes and assessment, based upon the capital stock of the corporation.

It appears that between August 28th, 1882, and October 7th, 1897, pursuant to our statute entitled "An act to incorporate and regulate telegraph companies," approved April

9th, 1875 (*Comp. Stat., p.* 5312), and its amendments and supplements, the following corporations were formed: New Jersey Telephone Company, Metropolitan Telephone and Telegraph Company (formerly the Bell Telephone Company of New Jersey), Domestic Telegraph and Telephone Company of Newark, New Jersey, Northeastern Telephone and Telegraph Company, Sea Shore Telephone Company and Hudson River Telephone Company. On June 15th, 1883, the New Jersey Telephone Company consolidated with a corporation of New York known as the New York and New Jersey Telephone Company, and changed its name to New York and New Jersey Telephone Comapny. On March 25th, 1887, the Metropolitan Telephone and Telegraph Company consolidated with the New York and New Jersey Telephone Company, and changed its name to New York and New Jersey Telephone Company. On March 6th, 1890, the Domestic Telegraph and Telephone Company consolidated with the New York and New Jersey Telephone Company, and changed its name to New York and New Jersey Telephone Company. On September 21st, 1909, the New York and New Jersey Telephone Company consolidated with a corporation of New York called the New York Telephone Company, and changed its name to New York Telephone Company. Subsequently the Northeastern Telephone and Telegraph Company, Sea Shore Telephone Company and Hudson River Telephone Company consolidated with the New York Telephone Company, and changed their names to New York Telephone Company.

There is no evidence that any of the corporations above named as having been incorporated pursuant to our Telegraph Companies act, and its amendments and supplements, have ever been dissolved in the manner provided in that act, and, at present we are not concerned with their legal status except to ascertain the validity of the license or franchise tax against the prosecutor based upon its capital stock.

The prosecutor says that it is not subject to payment of a license or franchise tax based upon its capital stock, because, as it contends, it is subject to a state franchise tax upon the basis of its gross receipts (although it has no receipts).

In support of that proposition the prosecutor points to the reference to "telephone" companies in sections 1, 2 and 4 of an act entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof" (*Comp. Stat., p.* 5286), and argues that the legislature thereby had reference to all corporations incorporated under the Telegraph Companies act. But we think that such reference to "telephone" companies can have application only to that class of telephone companies who are engaged in *operating* telephone lines within the State of New Jersey *and acquiring gross receipts* as a result of such operation. Sections 2 and 4 of the act show that the tax to be imposed on the "telephone" companies, referred to in section 1, is to be measured by the gross amount of such companies' receipts arising from business done within this state; and that being the only measure provided for ascertaining the tax, it follows that the legislature did not intend to include in the "telephone" companies referred to in section 1, such corporations as (a) operate outside of New Jersey; (b) corporations merely owning an interest in other telephone companies, or (c) corporations not operating at all, but maintaining corporate existence. The agreed fact is that since September 30th, 1927, the prosecutor has confined its telephone operations to the States of New York and Connecticut. Hence since September 30th, 1927, the prosecutor has not been a corporation subject to taxation on its gross receipts under the provisions of the so-called Voorhees act of 1900 (*Comp. Stat., p.* 5298; *Cum. Supp. Comp. Stat., p.* 3568), entitled:

"An act for the taxation of all the property and franchises of persons, co-partnerships, associations or corporations using or occupying public streets, highways, roads or other public places, except municipal and corporations taxable under the act entitled 'An act for the taxation of railroad and canal property,' approved April tenth, one thousand eight hundred and eighty-four, or any of the supplements or amendments thereto, and except corporations taxable under the act entitled 'An act for the taxation of the property and

franchises of street railroad corporations using or occupying public streets, highways, roads, lanes or other public place in this state,' approved May twenty-third, one thousand nine hundred and six."

We see, therefore, that the prosecutor falls within that class of corporations that is subject to the provisions of the supplement of 1906 to the Franchise Tax act (*Cum. Supp. Comp. Stat., p.* 3565), and which provides for the taxation of all corporations incorporated under the laws of this state other than those which are subject to the payment of a state franchise tax assessed upon the basis of gross receipts. This Franchise Tax act of 1884 was construed in *Tide-Water Pipe-Line Co.* v. *Berry,* 52 *N. J. L.* 308; 19 *Atl. Rep.* 665, as follows: "The act of 1884 required all the enumerated corporations doing business in this state to pay an annual tax, for the use of the state, by way of a license for their corporate franchises. The imposition is not in compensation for the grant of the franchise by the state, but for the use of the franchises in the state. Foreign corporations doing business in this state are within the language of the act. The language of the fourth section, 'all other corporations incorporated under the laws of this state' shows that the draftsman of the act had in his mind the distinction between corporations doing business in this state and corporations created by the laws of this state. The purpose of that provision was to bring within the operation of the act those corporations incorporated under the laws of this state to transact business in other states, and which were therefore not included among the corporations 'doing business in this state.' "

We think that the prosecutor is subject to the payment of a license or franchise tax under our laws notwithstanding the relationship entered into by the corporations organized under the laws of New Jersey on the one hand and the corporations organized under the laws of New York on the other hand. The record shows that the prosecutor has repeatedly held itself out as a corporation "of the States of New York and New Jersey," and moreover carried on the telephone

business within this state until September 30th, 1927, as a corporation of the States of New York and New Jersey.

Section 11 of our Telegraph act (*Comp. Stat., p.* 5321), declares "that any telegraph company chartered under the provisions of any act of this state, may connect and consolidate with any other incorporated telegraph company, whether chartered by or existing under a law of this state, or of any other state; and may under such consolidations, by resolution of its board of directors, change its name, which change of name shall take effect on filing a copy of such resolution, certified under its corporate seal, in the office of the secretary of state of this state; provided, that neither such connection, consolidation or change of name shall affect the obligations or debts of said company, or the process for their enforcement or lien upon its property."

So it will be seen thereby that the only grant of power to companies formed under our act is to "connect and consolidate." The agreement between the corporations states that they "agreed to connect and consolidate with each other * * *." In the agreement between the New York and New Jersey Telephone Company, and the New York Telephone Company it is declared: "The parties hereto agree, and each of the parties hereto for itself severally does hereby agree, that the said corporations, the parties hereto, shall form and after the date hereof be united, connected and consolidated and bear the corporate name of the New York company, to wit, 'New York Telephone Company,'" and it is presumed that the transactions entered into by our corporations were taken in accordance with the provisions of our statute. Our statute gives no indication of an intent on the part of the legislature that the connection and consolidation of a New Jersey corporation with a foreign corporation should result (a) in the dissolution of the New Jersey corporation, or (b) in the swallowing up of the New Jersey corporation by the foreign corporation with whom it undertakes to "connect and consolidate." All that our statute appears to do is to assume the existence of a New Jersey corporation and authorize such corporation to "connect and consolidate" with

a corporation of another state, and to change its (the New Jersey corporation's) name. The rule that the consolidate corporation is a new and distinct creation does not apply where the constituent corporations owe their existence to different states; for certain purposes, they remain a separate corporation in each state. While there is a union of interest and property, there is said to be no merger of personal or legal identity. *Muller* v. *Dows,* 94 *U. S.* 444; 24 *L. Ed.* 207. For all the purposes of law, our corporations remain corporations of this state. *Easton, &c., Bridge Co.* v. *Metz,* 32 *N. J. L.* 199. A state legislature may authorize the consolidation of a corporation of one state and corporations chartered by other states, but the resulting consolidated corporation is a corporation of each of the states authorizing the same, and its powers and liabilities within each state are determined by the law of that state. *Baltimore & R. Co.* v. *Harris,* 12 *Wall* (*U. S.*) 65; 20 *L. Ed.* 354.

Contending against the tax the prosecutor refers us to the case of *People* v. *New York, Chicago and St. Louis Railroad,* 129 *N. Y.* 474. But unlike the situation presented in the New York case, in this case (a) there is no attempt to exact an organization tax from the prosecutor, as an imposition for the acts of these New Jersey corporations and these New York corporations, in connecting and consolidating; (b) section 11 of our Telegraph act is not "an incorporation act;" (c) the act of connecting and consolidating performed by these corporations, under the enabling acts of the two states, did not result in the creation of a *new* corporation and the dissolution of the corporations participating in the connection and consolidation (at least, not to the extent of terminating the obligation of the New Jersey corporations to pay a franchise tax). On the contrary, our Franchise Tax act imposes but one tax, which is to be assessed annually from the birth of the corporation until its corporate existence is legally terminated. This tax is imposed for the privilege of existing in corporate form and of having the advantages associated therewith. We think that the obligation to pay this tax continues notwithstanding the connection and con-

solidation, inasmuch as the several corporations incorporated under our law still exist and, while forming for certain purposes a constituent part of the corporate prosecutor, nevertheless remain the creatures and creation of New Jersey as they were before the connection and consolidation, and as a result of this continued existence, the prosecutor now possesses, as a corporate entity, the right to acquire and to hold an interest in any telephone line or lines operating in this state and, in addition, the right to engage in the operation of the telephone business in this state and to exercise all the privileges granted by the Telegraph act of New Jersey to companies incorporated thereunder.

If it be considered that the relationship entered into between these New Jersey corporations and this New York corporation is equivalent to a merger as that term is used in our General Corporation act, such merger does not operate to dissolve the New Jersey companies. *Windhurst* v. *Central Leather Co.*, 105 *N. J. Eq.* 621; 149 *Atl. Rep.* 36; *affirmed*, 153 *Id.* 402. The contention of the prosecutor that all the New York corporation did was to acquire (by purchase from the shareholders of the New Jersey companies) the stock of the New Jersey companies and take a bill of sale for the property of said companies, really amounts to a contention that the authorization in the Telegraph act permitting companies incorporated thereunder to connect and consolidate with foreign corporations is equivalent to a grant of power to alienate the primary franchise to be and exist in corporate form. To that contention we cannot agree. *In re United States Car Co.*, 60 *N. J. Eq.* 514; 43 *Atl. Rep.* 673.

As a result of the refusal of the prosecutor to make a return to the state board of taxes and assessment to show the amount of capital stock it had issued and outstanding, that body ascertained the amount of capital stock that the prosecutor was authorized to issue and based a tax upon such authorized amount. Inasmuch as the supplement to the Franchise Tax act (*Cum. Supp. Comp. Stat., p.* 3565) provides that the tax to be imposed thereunder shall be based only upon the amount of issued and outstanding capital stock,

and inasmuch as the amount of such issued and outstanding stock of prosecutor at the time the tax was assessed was $305,600, whereas the tax was assessed upon the erroneous assumption that such issued stock amounted to $450,000,000, it is and must be conceded that the tax as assessed is to this extent erroneous in amount.

Let judgment be éntered for the amount of the tax so reduced.

No costs are allowed.