### STECKLER v. PENNROAD CORPORATION et al.

No. 368.

District Court, E. D. Pennsylvania.

April 6, 1942.

James Howard Molloy, of Philadelphia, Pa., for plaintiff.

R. Sturgis Ingersoll, C. B. Heiserman, and Lewis M. Stevens, all of Philadelphia, Pa.,

Elder W. Marshall, of Pittsburg, Pa., and Thomas Stokes and W. Heyward Myers, Jr., both of Philadelphia, Pa., for defendants.

WELSH, District Judge.

This is a stockholders' derivative action brought against the directors of the Pennroad Corporation. The bill of complaint charges that the directors caused the corporation to purchase and hold stock of the Boston & Maine Railroad in violation of the Statutes of New York and Massachusetts, and that a loss resulted therefrom for which an accounting is sought. The defendants moved for judgment on the pleadings, primarily on the ground that the statute of New York applies only to railroads organized and existing under the laws of that state and not to the Boston & Maine, a consolidated corporation existing under the laws of several states; and also on the ground that the Massachusetts statute imposes no limitations upon the holdings of Pennroad· as alleged in the complaint.

The New York statute in question is Section 54, subdivision 2 of the Public Service Law of New York, Consolidated Laws of · New York 1910, Chapter 48. It provides that a corporation may not "purchase or acquire, take, or hold, more than ten per centum of the voting capital stock issued by any railroad corporation * * * organized or existing under or by virtue of the laws of this state", and further that "Every contract, assignment, transfer or agreement for transfer of any stock * * * in violation of any provision of this chapter, shall be void and of no effect, and no transfer or assignment shall be made upon the books of any such railroad corporation * * * or shall be recognized as effective for any purpose." Violation of the act by individuals and corporate officers is declared a misdemeanor and a penalty is provided.

The Massachusetts statute referred to is Chapter 597 of the Laws of Massachusetts 1913 which provides that no corporation organized or subject to the provisions of the Massachusetts Business Corporation Law, Chapter 437 of the Acts and Resolves of Massachusetts 1903, "shall hereafter purchase or acquire, take or hold, directly or indirectly, more than ten per cent of the total capital stock of a corporation organized under the general or special laws of the commonwealth for the purpose of carrying on within the commonwealth the business of a railroad * * *."

The Pennroad Corporation, incorporated under the laws of Delaware, purchased and still holds 19½ per cent of the stock of the Boston & Maine Railroad, which is a consolidated corporation existing under the laws of New York, Massachusetts, New Hampshire and Maine.

The principal issues concern the effectiveness of the New York and Massachusetts laws to limit a Delaware corporate stockholder in the amount of its holdings in the Boston & Maine Railroad, and the right of a Pennroad stockholder to attack the validity of such holdings in this proceeding.

The Boston and Maine is a multiple corporation owing its existence to the concurrent action of the four states which authorized the consolidation. The defendants therefore contend that it is not a "railroad corporation organized and existing under the laws" of New York within the contemplation of the New York statute; and that even though the statute were intended to apply to such consolidated corporations, the act could only be enforced by the courts of New York within their territorial limits. If such arguments are sound the defendants are entitled to judgment upon the first and second causes of action, which complain that the Pennroad's purchases and holdings are in violation of the New York Act.

The question as to whether the New York Statute applies can best be determined by an examination of the New York decisions construing statutes relating to corporations organized under the laws of that state, as applied to multiple or consolidated corporations formed under the laws of several states. A number of cases are found which successively hold that consolidated railroad corporations, consisting of constituent corporations organized respectively in different states including New York, are not corporations "organized and existing under the laws" of that state within the meaning of statutes employing that term. In People v. New York, C. & St. L. Railroad Co., 129 N. Y. 474, 29 N.E. 959, 15 L.R.A. 82, it was held that a franchise tax imposed upon consolidated railroad corporations organized under the laws of New York and other states was not applicable to the consolidated company involved inasmuch as it was not incorporated by or under any general or special law of that state. The court declared that where the result of the consolidation is a new corporation in place of two or more domestic corporations, the resulting entity is a corporation organized under the laws of the state and therefore taxable. Where, however, the constituent companies derived their corporate life and powers from the legislatures of other states, they were not subject to the laws of New York, but were wholly and exclusively subject to the laws of their own states. The laws of their respective domiciles affirmatively fixed their capital, franchises and powers, including the power of consolidation, and the legislature of New York was impotent alone to accomplish the consolidation of the rights, privileges, franchises and properties of the constituent companies. New York could not vest the franchises of the respective companies in the consolidated corporation, or control the conversion of their stocks, or confer any exclusive authority except upon like consent of the other states being given to the merger of the franchises and properties into the new entity. The court concluded that the new corporation would not owe its existence to New York alone, but to New York and the other states in which the constituent companies were formed; the consolidated corporation was therefore not in any strict or even just sense a corporation incorporated and existing under the laws of New York.

A like conclusion was reached in New York C. Railroad Co. v. Flynn, 233 App. Div. 123, 251 N.Y.S. 343, affirmed 257 N.Y. 553, 178 N.E. 791, involving a statute imposing a tax on shares of corporations formed under the laws of New York, and in which a consolidated corporation formed of constituent companies organized in other states was held not to be a New York corporation for such tax purposes. The same principle was followed in a New York case which concerned an Illinois constitutional limitation affecting one of the constituent companies formed under the laws of that state. Venner v. New York C. & H. R. Railroad Co. et al., 177 App.Div. 296, 164 N.Y.S. 626; Id., 226 N.Y. 583, 123 N.E. 893. There it was held (following Ohio & M. R. Co. v. People, 123 Ill. 467, 14 N.E. 874) that the Illinois constitutional prohibition with respect to the constituent Illinois corporation did not apply to the consolidated corporation organized under the laws of Illinois and other states.

■ It may be conceded that, so far as its operations within the state are concerned, the multiple or consolidated corporation is a domestic corporation, but with respect to the matters affecting the corporation as a whole it is a creature of the several

states which contributed to its existence, and therefore not controlled by state statutes affecting corporations organized under the laws of the statute-making state. "In its organization and action, and the practical management of its property, it was one corporation, * * * though, in its relations to any state, it was a separate corporation, governed by the laws of that state as to its property therein." Graham et al. v. Boston, H. & E. Railroad Co. 118 U.S. 161, 169, 6 S.Ct. 1009, 1013, 30 L.Ed. 196. Such a consolidated corporation is not a foreign corporation in any of the states which authorized its existence. "It is a domestic corporation in each of them. It is a single corporation in most of its features. In other features it is two corporations acting together as one. It is a single corporation with two parents who live apart and act independently, each having absolute control in his own domain. It owes allegiance and is subject alike to each, and is dependent upon each alike for future favors." Attorney General v. New York, N. H. & H. Railroad Co., 198 Mass. 413, 84 N.E. 737, 738.

■■■ New York courts have distinguished consolidated multiple corporations formed under the laws of several states, from corporations organized and existing under the laws of New York, both with regard to tax statutes and to other state limitations, and have recognized the limitation of the state's power to regulate the general corporate affairs. We are therefore bound by the principles thus established and are precluded from adopting the interpretation urged by the complainant. There can be no doubt that regulations and limitations of Pennroad stockholdings and transfers concern general corporation affairs extending beyond state boundaries, and they are therefore not subject to the restrictions of the New York statute in question. Having determined that the New York laws do not control the validity of Pennroad's purchases in this case, it becomes unnecessary to discuss the question as to whether or not the New York statute may be enforced by courts other than those of that state, and we pass on to a consideration of the Massachusetts statute.

■■■ The Massachusetts statute involved in the complaint was obviously designed, like the New York statute, to protect Massachusetts railroads from the control of holding companies. It prohibits certain corporations from holding more than 10% of the stock of Massachusetts railroad cor-

porations, and to that extent the issue with regard to the Massachusetts act is the same as that discussed and determined in connection with the New York statute. The conclusion reached is adequately supported by the Massachusetts cases. Attorney General v. New York, N. H. & H. Railroad Co., 198 Mass. 413, 84 N.E. 737; Brown et al. v. Boston & Maine R. R., 233 Mass. 502, 124 N.E. 322. The defendants further argue that the Massachusetts statute is, by its own terms, inapplicable to the Pennroad purchases and an examination of the act seems to confirm this contention.

That act declares that no corporation organized under or subject to Chapter 437 of the Massachusetts Business Corporation Law 1903 shall hold more than 10% of a Massachusetts public service corporation. It is found upon inspection that Chapter 437 relates only to domestic corporations and obviously was not intended to apply to foreign corporations, especially those not doing business in Massachusetts. The Supreme Judicial Court of Massachusetts has also said that under the terms of the statute, "Only domestic corporations are forbidden to hold more than ten per cent of the stock of such a company". Flynn v. Commissioners of Department of Public Utilities, 302 Mass. 131, 18 N.E.2d 538, 540. The Massachusetts statute clearly has no effect upon the purchase and holding of Boston & Maine stock by Pennroad and the complainants' third cause of action must likewise fall.

■■■ In passing upon the purely legal issues involved, it seems proper to comment upon other issues raised by the able arguments of counsel. The New York act is a penal one providing a penalty for its violation, and yet it appears that no effort has been made by any public officer to enforce the penalty or to nullify the Pennroad holdings during the many years of the alleged violation. Even though the mere passing of time may not preclude the imposition of the penalties by the state for a continuing offense, it seems incredible that this court should now be asked to give effect to the statute by persons other than those intended to be benefited by the act. There is no law of this jurisdiction which renders the Pennroad's holdings unlawful nor does it appear that there is any breach of the law of the corporate domicile. The limitation, if any, must be found in foreign statutes which have not been enforced by officials charged with their enforcement over a long period of years, and unless compelled by the author-

ity of established law, this court should decline the responsibility of enforcing or giving effect to the statutes in question.

■■ The New York Statute is regulatory and gives the state officials the power to challenge, in proper proceedings or by the imposition of penalties, the alleged illegal transfer and holding of the stock. "This is a right of the state and should not be a matter of solicitude on the part of the plaintiff" (Kansas City S. R. Co. v. Chicago Great Western R. Co., D.C., 58 F.2d 810, 811), and he may properly be denied the opportunity to exercise in this proceeding the rights and privileges which obviously belong to the state which enacted the statute. While an equity court is always ready and willing to extend its remedies in aid of complainants whose rights have been affected, we are convinced that to hold the defendant directors liable merely on the ground that a state law has been violated and without a showing that such violation was, through negligence or otherwise, the cause of the alleged loss, would be unjust and inequitable. No actual loss has been alleged, nor has it been shown that the Pennroad's holdings are in any actual jeopardy. There is, of course, the possibility that New York state authorities might seek to enforce the act or to declare invalid the Pennroad holdings, but in view of the decisions cited and the probability that regulation of holdings in interstate railroads may be assumed by the federal government in furtherance of its transportation policy, such possibility seems quite remote.

■ The right of a state to regulate or limit the corporate affairs of railroads engaged in interstate commerce must be restricted to matters pertaining to the operations and affairs exclusively within its borders and properly within its police powers. We know of no principle which requires the extension of even that right to an individual for the purpose of enforcing the state regulations in a foreign jurisdiction in the interest of establishing such individual or corporate loss as is here claimed; and in the absence of any averment that the alleged unlawful investment was the actual cause of a provable loss the complainants' causes must fail.

The conclusion that the state statutes in question are not applicable necessarily infers that the complainant has no right to seek the enforcement of those statutes in this proceeding, and no other equitable rights having been shown, the bill of complaint is dismissed.