## STECKLER v. PENNROAD CORPO-RATION et al.

### No. 8072.

Circuit Court of Appeals, Third Circuit.
Argued Dec. 9, 1942.
Decided May 11, 1943.

198

James H. Molloy, of Philadelphia, Pa. (James Howard Molloy, of Philadelphia, Pa., and Emil Weitzner, Joyce N. Feldman, and Eugene M. Parter, all of New York City, on the brief), for appellant.

R. Sturgis Ingersoll, of Philadelphia, Pa. (C. B. Heiserman, of Philadelphia, Pa., Elder W. Marshall, of Pittsburgh, Pa., and W. Heyward Myers, Jr., Lewis M. Stevens, Thomas Stokes, Ballard, Spahr, Andrews & Ingersoll, Morgan, Lewis & Bockius, Pepper, Bodine, Stokes & Schoch, and Stradley, Ronon, Stevens & Young, all of Philadelphia, Pa., on the brief), for appellees.

Before MARIS, JONES, and GOODRICH, Circuit Judges.

GOODRICH, Circuit Judge.

Appellant is a shareholder of the Pennroad Corporation of Delaware. He instituted a derivative action against the corporation and certain of its past and present directors. Named also as defendants are the representatives of certain persons, now deceased, who were directors at the time of the acts complained of. The claims made were alleged to have arisen upon the purchase and holding by the corporation of the capital voting stock of the Boston & Maine Railroad in excess of the amount permitted by the laws of New York and Massachusetts. The defendants filed their answer moving for dismissal of the complaint. The court below dismissed the action and this appeal was taken.

The Boston & Maine Railroad is a multiple corporation, incorporated under the laws of New York, Massachusetts, New Hampshire and Maine. It is alleged that Pennroad purchased, in 1931 and prior years, and is still holding approximately nineteen and one half per cent of the capital voting stock of the Boston & Maine. Such purchase and holding, it is said, violates subdivision (2) of § 54 of the Public Service Law of New York, Consol.Laws, c. 48, and § 5 of Chapter 156 of the General Laws of Massachusetts (Ter.Ed.1932).

Our inquiry may be more clearly directed to the essential problem of the case if the considerations may first be narrowed. This we do by disposing first of the Massachusetts statute.

That Act provides: "No corporation, * * * shall purchase, * * * or hold, * * * more than ten per cent of the total capital stock of any domestic corporation authorized to carry on within the commonwealth the business of a railroad, * * *."

It may be assumed that the Boston & Maine Railroad falls within the statutory description of a "domestic corporation authorized to carry on within the commonwealth the business of a railroad". See Attorney General v. New York, N. H. & H. R. Co., 1908, 198 Mass. 413, 84 N.E. 737; Peters v. Boston & Maine R. Co., 1873, 114 Mass. 127. Does the prohibition of the statute apply to the acquisition and holding by Pennroad, a Delaware corporation?

The Supreme Judicial Court of Massachusetts in Flynn v. Commissioners of Department of Public Utilities, 1939, 302 Mass. 131, 18 N.E.2d 538, 540, stated categorically, in considering the applicability of this section, that "Only domestic corporations are forbidden to hold more than ten per cent of the stock of such a [gas or electric] company. G.L.(Ter.Ed.) c. 156, § 5. See also c. 181, § 10." Gas and electric companies are among those listed in § 5 along with railroads. Plaintiff, in his elaborate analysis of the case, argues that this statement is mere dictum. But, the brief of the Attorney General of Massachusetts in the case, a copy of which has been made available to us, shows that the point was specifically made to the court and the court's citation of chapter 181

of the statute[1] shows that the court meant precisely what it said. This forthright statement as to the applicability of § 5 is conclusive upon us as to the Massachusetts law. While it is ordinarily true that foreign corporations are restricted in their activities within a state to the same extent which the state restricts the activities of a domestic corporation,[2] that rule, under the Flynn case, supra, does not apply to the holding by the foreign corporation of shares in a Massachusetts railroad company.

■ The plaintiff's argument that the purchase and holding were ultra vires for Pennroad stands on no firmer ground. Our attention is called to paragraph Third (12) of the certificate of incorporation of the Pennroad Corporation which, in enumerating its powers states: " * * * ; provided, however, that the Corporation shall not in any state, territory or country, carry on any business, or exercise any powers, which a corporation organized under the laws of said state, territory or country could not carry on or exercise except to the extent permitted or authorized by the laws of such state, territory or country." Since the Supreme Judicial Court of Massachusetts has stated that the purchase and holding of stock by a foreign corporation in a domestic railroad company is not forbidden by the Massachusetts law, there is no violation of the provisions of the charter so far as that law is concerned.

■ Our legal problem is narrowed, therefore, to the question of the effect of the New York statute. It is to be kept in mind that this case is in federal court on grounds of diversity of citizenship only. It is state law which the court applies to the rights and liabilities of the parties. We have a Delaware corporation, certain Pennsylvania defendants, a New York plaintiff and acts done by the defendants which are alleged to have injured those on whose behalf plaintiff sues because of an asserted violation of New York law. In this multi-state situation the federal court applies the rules of conflict of laws of the state in which it sits. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. If there are state authorities in point they are controlling; if not, the federal court fashions its rule from the materials at hand as best it can.

The New York statute provides " * * * no stock, corporation of any description, domestic or foreign, * * *, shall purchase or acquire, take, or hold, more than ten per centum of the total[3] capital stock issued by any railroad corporation * * * organized or existing under or by virtue of the laws of this state * * *."

The problem under the New York statute can be, in turn, split into three parts.

1. Does the phrase "organized or existing under or by virtue of the laws of this state" apply to a corporation holding a charter from other states as well as from New York so as to make the prohibition applicable? And, if it does, should that prohibition be referred to as the controlling rule, to the exclusion of the laws of the other charter states, in litigation in another forum to which the corporation in question is a stranger?

2. Is the New York statute one which creates private rights or is it a regulation of corporate activity enforcible only at the suit of the public authorities of New York?

3. If there is a claim enforcible by a private litigant under the law of New York is it the type of claim which may be enforced in the courts of another state?

Is the New York Statute Applicable
to the Boston & Maine in a Suit
Brought in Pennsylvania?

The New York statute quoted above does not state explicitly whether corporations chartered by New York law and that of other states are included in its provisions. This is not surprising; the multiple corporation is not new, but is practically non-existent outside the railroad field.[4]

---

[1] G.L.(Ter.Ed.) c. 181, § 10, cited by the court, recognizes, as the Attorney General indicated, that a foreign corporation may own more than ten per cent of the stock of a domestic street railway, gas or electric company. Although it does not refer to railroads, it explodes plaintiff's contention that the prohibition of c. 156, § 5 applies to all foreign corporations.

[2] Restatement, Conflict of Laws (1934)

§ 165 and comments; see also c. 181, § 2 of the General Laws of Massachusetts (Ter.Ed.).

[3] L.1929, c. 687, § 1 of the Laws of New York. Subsequently, "total" was changed to "voting." L.1930, c. 788.

[4] A writer in the Yale Law Journal reports that "A survey of Moody's manuals has revealed no multiple corporations among the industrial and public utility corporations and only 68 among the rail-

For the proposition that the Boston & Maine, with its incorporation in four states, is not to be treated as one "organized or existing under or by virtue of the laws" of New York the defendant relies chiefly on three cases, all of which concern the applicability of New York tax laws. The strongest is that commonly known as the Nickel-Plate case, People v. New York, C. & St. L. R. Co., 1892, 129 N.Y. 474, 654, 29 N.E. 959, 15 L.R.A. 82. The New York court held that the statute taxing stock corporations "incorporated by or under any general or special law of this state," for the privilege of organization did not apply to the consolidation of a New York corporation with a railroad company already incorporated in Pennsylvania, and the subsequent consolidation of that company with railroads incorporated in Ohio and Indiana. Some of the language is pretty sweeping and goes far to support the position of the defendant.[5] In the case of In re Cooley's Estate, 1906, 186 N.Y. 220, 78 N.E. 939, 10 L.R.A.,N.S., 1010, the court considered a multiple corporation, incorporated in New York and elsewhere, a domestic corporation for the imposition of a succession tax upon the transfer of its stock at the death of the owner, but, nevertheless, limited the measurement of the tax to the New York owned property. Again, it was held that the multiple corporation is not a domestic corporation for the purpose of a tax on the increase of capital stock, even though "each state treats such a consolidated corporation within its own territory as a domestic corporation." New York Cent. R. Co. v. Flynn, 3rd Dept. 1931, 233 App.Div. 123, 251 N.Y.S. 343, 346, affirmed 1931, 257 N.Y. 553, 178 N.E. 791.

We do not think the tax cases are conclusive upon the point. They do show that for the purposes of taxation by New York, the New York courts do not treat the multiple corporation solely as a New York corporation. They thereby make what has seemed to the courts an equitable application of New York tax laws in view of the multi-state character of the multiple corporation.

Other New York decisions, on varying facts, emphasize the domestic nature of the multiple corporation. Thus, such corporations have been treated in New York as domestic corporations for the purpose of inspection of corporate books,[6] the running of the statute of limitations,[7] and for upholding the validity of acquisition of shares in other corporations where permitted by the law of New York.[8]

Of course it cannot be denied that New York, subject to constitutional limitations, of course, can regulate the acts of a corporation which take place in New York and determine their legal effect. It can do that with regard to the activities of a foreign corporation which does business in New York. It certainly does not lose any of that power when the foreign corporation becomes also a New York corporation and acquires what Mr. Foley describes as an additional "legal personality".[9] New York undoubtedly can regulate the Boston & Maine as a domestic corporation in many particulars, either as a multiple corporation or by applying to it the general statutes applicable to domestic corporations. But the tax cases show that all the statutes applicable to domestic corporations do not necessarily become applicable to a multiple corporation. We are not clear that the one quoted above is applicable; it may be. But, even if it is, this suit is not in New York, but in a federal court in Pennsylvania, and is governed

roads." See Note (1937) 46 Yale L.J. 1370, 1382, f.n. 88.

On the subject of multiple incorporation in general see Foley, Incorporation, Multiple Incorporation, and the Conflict of Laws (1929) 42 Harv.L.Rev. 516; Restatement, Conflict of Laws (1934) §§ 203–207; 2 Beale, The Conflict of Laws (1935) § 203.1 et seq.; 15 Fletcher, Cyclopedia Corporations (1938) § 7181 et seq.; Note, Multiple Incorporation as a Form of Railroad Organization (1937) 46 Yale L.J. 1370; Note, The Effect of Multiple Incorporation on Access to the Federal Courts (1931) 44 Harv.L.Rev. 1106. For a collection of the New York cases on the subject, see Restatement, Conflict of Laws; N.Y. Annot. (1935) §§ 203–207.

[5] See 15 Fletcher, Cyclopedia Corporations (1938) § 7189 for criticism.

[6] Matter of Sage v. Lake Shore & M. S. R. Co., 1877, 70 N.Y. 220.

[7] Boardman v. Lake Shore & M. S. Ry. Co., 1881, 84 N.Y. 157, 184.

[8] Venner v. New York Cent. & H. R. R. Co., 2d Dept. 1917, 177 App.Div. 296, 164 N.Y.S. 626, 653, 659, affirmed 1919, 226 N.Y. 583, 123 N.E. 893, certiorari denied 1919, 249 U.S. 617, 39 S.Ct. 391, 63 L. Ed. 803.

[9] See Foley, supra note 4, at pp. 519, 520.

by the Pennsylvania rule of reference for such cases. And in this case not only the laws of New York, but those of Massachusetts, New Hampshire and Maine are equally pertinent for Pennsylvania's consideration. Upon this point we find no Pennsylvania decision which is controlling, or even helpful in pointing the way; therefore we must meet the question without the benefit of local authority.

It has been held that as to the issue of shares, this being a question common to all the states concerned in the multiple corporation, compliance with the law of all the incorporating states must be made, and a non-charter state will give effect to a prohibition of the particular issue imposed by one.[10] On the other hand, a prohibition on ownership of one incorporating state was curtly refused extraterritorial recognition by another of the incorporating states.[11] The prohibition in the case at bar has nothing to do with issue of corporate shares, creation of corporate indebtednesses nor with anything concerning the creation or operation of the Boston & Maine as a going enterprise. It has at most an effect on who may own the shares of that company after they have been legally issued in compliance with the law of all the states concerned. We do not have in this case, therefore, that broad type of restriction which affects the corporate enterprise as a whole, and which should be given effect by other charter states or in a neutral state as a forum. One can think of instances in which a local regulation, if applied to a multiple corporation, might be effective in the state enacting it, but would be without significance elsewhere. A provision for publication of names of corporate officers and directors might be an example. The regulation in the case before us does not fit precisely into either niche. There being but one issue of stock for the several corporate personalities, an effective regulation of its ownership does concern the corporate enterprise as a whole in one sense. On the other hand, the nature of the statute involved bears all the marks of a local regulation for the maintenance of standards of service by New York companies rendering public service in that state, a matter which concerns neither the other incorporating states, nor Pennsylvania which is a stranger to the corporation.

 To sustain the plaintiff's contention, we should have to find, first, that the New York statute applied to shares of a multiple corporation of New York and other states. This is possible. Then we should have to find that the attempted purchase was not only prohibited but a complete nullity by New York law.[12] Then we should have to say as a matter of Pennsylvania conflict of laws rule that the New York prohibition is effective as against the rules allowing the purchase under the laws of the other three chartering states. This is a large order; too large for us to fill. But unless it is filled as to every item, the plaintiff's case fails. We need not rest a decision on this point alone, however, for the other reasons, presently to be considered, make the difficulties in the way of the plaintiff's recovery insuperable, in our judgment.

### Who May Complain of Violation of the Statute?

The second question is whether, assuming the statute applies to the purchase of Boston & Maine stock by Pennroad, anyone except the Public Service Commission of New York may complain of the violation. An analogous question is found in the law of torts where it is clear that the violation of a legislative enactment does not make the actor liable for harm caused thereby to another if the enactment is designed exclusively to protect the interest of the state or the municipality. 2 Restatement, Torts (1934) § 288. The effect to be given the New York statute in this respect is, of course, a matter of the internal law of New York. If by that law no right arises in any person to maintain an action for violation of the statute,

---

[10] Pollitz v. Wabash R. Co., 1st Dept. 1912, 150 App.Div. 709, 135 N.Y.S. 785; Pollitz v. Wabash R. Co., 1st Dept. 1915, 167 App.Div. 669, 152 N.Y.S. 803.

[11] Venner v. New York Cent. & H. R. R. Co., supra.

[12] Subdivision (2) of § 54 provides that "Every contract, assignment, transfer or agreement for transfer of any stock by or through any person or corporation to any corporation, in violation of any provision of this chapter, shall be void and of no effect, and no such transfer or assignment shall be made upon the books of any such railroad corporation or street railroad corporation, or shall be recognized as effective for any purpose." But see Gray v. Gill, discussed infra.

a fortiori action cannot be maintained for alleged violation in another forum.[13]

■ We have one New York case which we think authoritative. It is Gray v. Gill, found in an unreported decision of the Supreme Court of Washington County, State of New York, dated March 11, 1927,[13½] and subsequently affirmed in per curiam opinions by the Appellate Division, 4th Dept. 1928, 223 App.Div. 809, 227 N.Y.S. 816, and the Court of Appeals, 1928, 250 N.Y. 519, 166 N.E. 308. In that case the beneficiaries of an estate complained of the sale of certain stock of an electric company by the trustee of the decedent's estate saying that it violated § 70 of the Public Service Law of New York.[14] The penalties and substance of the statute are the same as the prohibition and penalty provisions involved in this case. The learned trial judge denied the standing of the plaintiff to raise the issue saying that "It is a well recognized principle that when new rights and duties are established by statute the remedies therein prescribed must be followed, and at least in the first instance they must be deemed exclusive." The cause of action predicated on the alleged violation of § 70 was dismissed. While the Court of Appeals rendered no opinion, its per curiam memorandum notes that the point was in the case upon the appeal to that court. Likewise the brief of counsel[15] in the New York Court of Appeals shows that the problem under the Public Service law was brought to the court's attention by counsel for both parties. In spite of the plaintiff's attempt to distinguish it we think this case is satis-factory evidence of the New York law. And under it we think that the propriety of Pennroad's purchase of Boston & Maine stock is a matter to be raised by the Public Service Commission, if at all. That view is supported, although, of course, not by authority which we are bound to follow, by the decision by the District Court of Missouri under a similar statute in Kansas City Southern Ry. Co. v. Chicago Great Western R. Co., D.C.W.D.Mo.1932, 58 F. 2d 810.

### Is the New York Statute Enforcible in Another Forum?

■ Finally, there is the question whether claims arising under the New York statute are enforcible in another forum. The general rule on the subject is stated in Restatement, Conflict of Laws (1934) § 610 as follows: "No action can be maintained on a right created by the law of a foreign state as a method of furthering its own governmental interests." No Pennsylvania cases are to be found on this proposition though there are in Pennsylvania decisions supporting the analogous rule that actions for penalties imposed by the laws of a foreign state are not entertained locally.[16]

The reason back of the rule has been stated by Judge Learned Hand.[17] "To pass upon the provisions for the public order of another state is, or at any rate should be, beyond the powers of a court; it involves the relations between the states themselves, with which courts are incompetent to deal, and which are intrusted to other authorities. It may commit the domestic state to

[13] Restatement, Conflict of Laws (1934) §§ 384, 388; Restatement, Conflict of Laws; Pa. Annot. (1936) §§ 384, 388.

[13½] No opinion for publication.

[14] A temporary injunction against the transfer of the shares during the pendency of the action was granted originally on March 16, 1925. Subsequently the court continued the injunction pendente lite. The opinion is reported in Sup.Ct. 1925, 125 Misc. 70, 210 N.Y.S. 658. The Appellate Division affirmed the lower court on the basis of alleged fraud by the trustee. The court expressly left open the question decided in favor of the plaintiff in the lower court, of whether the cause of action on the alleged violation of § 70 had "legal merit." 3rd Dept. 1925, 214 App.Div. 833, 211 N.Y.S. 915. Subsequently, as stated in the text, the trial court took a different position on the issue and was affirmed on appeal.

[15] This brief has been made available to us through the courtesy of Judge Augustus N. Hand of the Second Circuit Court of Appeals. Although it appeared that the Public Service Commission had given its approval to the stock purchase sometime between the decision of the trial court and the presentation to the Court of Appeals, the plaintiff contended that this approval could not validate a transaction which he claimed was "void" by reason of the wording of the statute. The argument evidently failed to impress the Court of Appeals sufficiently to call for an opinion upon the point.

[16] See Restatement, Conflict of Laws (1934) § 611; Restatement, Conflict of Laws; Pa. Annot. (1936) § 611.

[17] Concurring in Moore v. Mitchell, 2 Cir., 1929, 30 F.2d 600, 604, 65 A.L.R. 1354, affirmed 1930, 281 U.S. 18, 50 S. Ct. 175, 74 L.Ed. 673.

a position which would seriously embarrass its neighbor."

Suits on foreign tax claims were thought to be within the rule[18] and the question is still left open by the decisions of the Supreme Court,[19] although it is now settled that among the states of the United States a judgment for taxes is entitled to full faith and credit.[20] A tax claim reduced to judgment obviously bears little relation to the claim made by the plaintiff here.

 We think that the provisions in subdivision (2) of § 54 of the New York Public Service Law regulate public affairs in New York and concern the governmental interests of that state. This is self-evident when the statute is viewed in its entirety. In the very same paragraph in which corporate stock ownership of a railroad corporation is prohibited, the Public Service Commission is given authority to grant permission for such holding limited only by the provision that "it shall have been shown that such acquisition is in the public interest."[21] The vesting of power, to authorize purchases in excess of the imposed limitation, in an administrative body of the state is a specific indication that the matter is primarily one of governmental concern. Section 56, subdivision (1) of the same chapter provides for forfeiture "to the people of the state of New York" not to exceed $5000 from a common carrier or railroad corporation which violates the chapter or fails to obey an order of the Commission.[22] Section 24 provides that suit to recover a penalty or forfeiture may be brought in any court of competent jurisdiction, in the name of the people of the state of New York, by counsel to the Commission. These enforcement provisions sound in terms of penal laws, clearly unenforcible in another state under the most liberal rule of conflict of laws.

But even if the violation of the statute in question gave rise to private claims by individuals, in the manner discussed above, we do not think that they are the type of claims cognizable in another forum. The subject-matter concerns the regulation of corporate activity in New York and the regulatory power of that state's Public Service Commission, matters with which another state has nothing to do. Under these circumstances we think that such an action would not be entertained in the state courts of Pennsylvania nor can it be maintained by a federal court in the district of Pennsylvania having jurisdiction because of diversity of citizenship. Cf. Griffin v. McCoach, 1941, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462.

The judgment of the District Court is affirmed.

---

[18] 3 Beale, The Conflict of Laws (1935) §§ 610.1, 610.2.

[19] Moore v. Mitchell, 1930, 281 U.S. 18, 50 S.Ct. 175, 74 L.Ed. 673.

[20] Milwaukee County v. M. E. White Co., 1935, 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220.

[21] Added by 1930 Amendment, L.1930, c. 788 of the Laws of New York.

[22] Note that the forfeiture provision applies, not to "any stock corporation" but to a common carrier, railroad corporation or street railroad corporation.